## THE STATE v. RICHARD MORRO, Appellant.

Division Two, February 26, 1926.

1. **FORGERY:. False Entries in Bank Book: Offense under Statute.** Under the statute (Sec. 3438, R. S. 1919) declaring that "every person who, with intent to defraud, shall make false entries, in a book of accounts kept by any moneyed corporation, and delivered or intended to be delivered to any person dealing with such corporation, by which any pecuniary obligation, claim or credit shall be or shall purport to be created, increased, diminished or discharged, shall be guilty of forgery in the third degree," an offense is committed by a bank cashier who makes a false credit to a fictitious person on the bank's certificate-of-deposit book of a part of a certificate of deposit payable to the order of another, with the intention that said book will be delivered to and will deceive the Commissioner of Finance or his examiners.

2. ———: ———: **Person Dealing with Bank: Commissioner of Finance: Non-Existent Officer When Statute was Enacted: Genus and Species.** Under the statute (Sec. 3438, R. S. 1919) making it forgery to falsely enter in a book of accounts of a moneyed corporation, "intended to be delivered to any person dealing with such cor-

poration," the Commissioner of Finance is embraced within the terms of the statute as "a person dealing" with a bank, although the statute was enacted in 1845 and there was then no such officer. The rule is that where a statute deals with a genus, and a species of that genus afterwards comes into existence, the language of the statute will generally be extended to embrace the new species. A "person dealing with such moneyed corporation" is a general expression, and the Bank Commissioner may be considered a person dealing with the bank, notwithstanding his existence and functions as bank examiner were not in contemplation by the Legislature when the statute was enacted.

3. ———: ———: **Intended for Delivery to Person Dealing with Bank: Bank Commissioner.** Under the statute (Sec. 3438, R. S. 1919) declaring it to be forgery in the third degree to make a false entry, with intent to defraud, in any book of accounts kept by a moneyed corporation, "and delivered or intended to be delivered to any person dealing with such corporation," persons dealing with the bank cannot be restricted to those dealings with it who would be directly affected by the particular false entries; but as the statute further says that the false entries are those "by which any pecuniary obligation, claim or credit shall be or shall purport to be created, increased, diminished or discharged, or in any manner affected," the Bank Commissioner is also a "person dealing with" the bank. The statute means that if the book is delivered or intended to be delivered to any person dealing with the bank, the crime is complete.

4. ———: ———: **Bank Commissioner: Dealer with Bank.** The Bank Commissioner is a person dealing with a bank. He does not represent the bank; he represents the State; he examines the bank for the purpose of protecting citizens who have deposits in it. There is no aspect of his office in which it could be said that he is not a person dealing with a bank when he is examining its condition, under the statute declaring that to make false entries in the books of a bank "intended to be delivered to any person dealing with such corporation."

5. ———: ———: **To Deal: Definition.** The words "to deal with" mean something more than *to traffic in*. In the statute declaring it to be forgery to make false entries in the books of a moneyed corporation "intended to be delivered to any person dealing with such corporation" the "person" is not limited to a customer, borrower, depositor, or a purchaser of exchange. "To deal with" means *to have to do with, to be concerned with, to be occupied with or in*, and applies to manifold transactions.

6. ———: ———: **Statute Includes All Bank Books.** The statute (Sec. 3438, R. S. 1919) declaring it to be forgery to make false entries "in a book of accounts kept by any moneyed corporation, and delivered or intended to be delivered to any person dealing with such corporation," embraces all books kept by the bank for the purpose of showing its condition and the state of its business; and when said statute is read in connection with the other (Sec 11700, R. S. 1919) relating to the duties and powers of the Bank Commissioner, it means that a bank book in which the cashier makes a false credit to a fictitious depositor is a book required by the statute to be delivered to the Commissioner, the word "delivered" implying, not a change of title, but a change of possession or control.

7. ———: ———: **Evidence: Other Forgeries and Embezzlements.** Proof of kindred forgeries other than the particular forgery for which defendant is being tried is admissible to show intent, and evidence of other embezzlements connected with such forgeries is admissible as a part of the transaction in each particular forgery.

8. ———: ———: ———: **Prior Examinations.** It is not error to exclude evidence offered by defendant cashier, charged with making a false entry in the books of a bank with intent to defraud, to show examinations of the books made in the year prior to the discovery of the false entry, where such evidence is offered for the purpose of refuting the evidence tending to prove false entries and defalcations of defendant, and the false entries were made by him for the purpose of concealing his embezzlements and had that effect.

9. ———: ———: **Confession: Impeachment: Retention of Defendant in Employ of Bank.** In a prosecution of the cashier of a bank for making a false entry in its books with intent to defraud, the State, and not the directors, is the party plaintiff, and any act or circumstance tending to show an admission by the bank or its directors favorable to defendant, such as his retention in his position as cashier after he had confessed the forgery and embezzlement, is not binding on the State, and does not affect the State's case; and if evidence that he was retained as cashier after he had in writing voluntarily made the confession was offered for the purpose of impeaching the witnesses who swore to the confession, it will not be ruled that it was erroneously excluded where defendant's counsel neither stated that it was offered for that purpose, nor laid a foundation for it by interrogating the witnesses sought to be impeached.

10. ———: ———: **Instruction: Assumption of Fact.** An instruction telling the jury that evidence had been introduced "as to other entries, and as to their falsity and transactions connected with

them, other than the entries charged in the information," though awkardly constructed, does not assume that the other entries were made and were false, and cannot be held to have misled the jury.

As, 5 C. J., Section 2, p. 601, n. 32 New. Criminal Law, 16 C. J., Section 981, p. 525, n. 72 New; Section 1139, p. 591, n. 26; Section 1163, p. 599, n. 2; p. 600, n. 21 New; Section 1515, p. 737, n. 62 New; Section 2330, p. 951, n. 9; Section 2477, p. 1036, n. 65; Deal, 17 C. J., p. 1154, n. 59, 60, 61. Forgery, 26 C. J., Section 3, p. 897, n. 12 New; Section 50, p. 924, n. 30; Section 116, p. 959, n. 1; Section 120, p. 962, n. 85; Section 128, p. 967, n. 69, 71. Statutes, 36 Cyc., p. 1113, n. 85.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield,* Judge.

AFFIRMED.

*Clarence Wofford* and *Bert S. Kimbrell* for appellant.

(1). The court erred in overruling the demurrer to the evidence, offered by the defendant at the conclusion of all of the evidence in the case, for these reasons: (a) The Bank Commissioner was not a person "dealing with" the Corn Exchange Bank within the meaning of Sec. 3438, R. S. 1919. Sec. 18, R. S. 1834-5; State v. Kelsey, 89 Mo. 623; State v. Bryant, 90 Mo. 534; State v. Reid, 125 Mo. 43; State v. Schuchmann, 133 Mo. 111; State v. Gritzner, 134 Mo. 512; State v. Howard, 137 Mo. 289; State v. Balch, 178 Mo. 392; State v. Koock, 202 Mo. 223; State v. Bartley, 304 Mo. 58. (b) The register of certificates of deposit was not "delivered, or intended to be delivered," within the meaning of Section 3438. 18 C. J. 476; 2 Words & Phrases, pp. 1958-1970; People's Natl. Bank v. Freeman's Natl. Bank, 169 Mass. 129; Elliott v. Murray, 225 Ill. 107; People v. Young, 237 Ill. 196; State v. Parkel, 185 Mo. App. 70. (c) The register of certificates of deposit was not a "book of accounts" within the meaning of Section 3438. Authorities under (a) and (b). (d) There was no proof that A. G. Barter whose name appears in the alleged false entry, had not deposited the sum of one hundred dollars with the Corn Exchange Bank and was not entitled to a certificate of deposit therefor. (e) There

was no proof of the *corpus delicti*. The crime charged could not be established solely by the extra-judicial admissions and confessions of the defendant. State v. Mullinux, 301 Mo. 385. (f)  There was no Bank Commissioner of Missouri in 1923. Laws 1921, p. 394. (2)  The court having admitted the evidence of witness Wayland to the effect that the defendant stated he was $42,000 short, the court erred in excluding evidence offered by the defendant showing that in the year immediately prior to June 15, 1923, there were six examinations of the books of the bank made, and erred in excluding evidence offered by defendant showing that for a period of two months, after the alleged confession of the defendant, the defendant was handling the cash of the bank and in charge of the cashier's window at the bank with the knowledge and consent of the directors of the bank and of Mr. Wayland, for the reason that the evidence offered impeached the alleged confession and showed that no such confession was made. State v. Powell, 258 Mo. 239.

*North T. Gentry*, Attorney-General, and *Wm. L. Vandeventer*, Assistant Attorney-General, for respondent.

(1)  Evidence of other drafts followed by false entries were admissible to show the intent with which the act was done and that it was to defraud. State v. Plotner, 283 Mo. 83; State v. Stark, 202 Mo. 222; State v. Minton, 116 Mo. 605; State v. Young, 266 Mo. 723; State v. Hodges, 144 Mo. 50; Comm. v. Russell, 156 Mass. 196. (2)  The extra-judicial confessions were corroborated. That can be done by circumstantial evidence as well as by direct evidence. Underhill on Crim. Ev. (3 Ed.) pp. 33, 34, 35, 36; State v. Schyhart, 199 S. W. 205; State v. Wheaton, 221 S. W. 26; State v. Vinton, 220 Mo. 90; State v. Clinkbeard, 142 Mo. App. 146, 232 Mo. 539. (3)  (a)  A "certificate of deposit register" is a book of accounts. (b.) The intent of the alterations was to defraud. (c)  Pecuniary obligations were purported to be created and diminished. State v. Plotner, 283 Mo. 83. (4) The "Com-

missioner of Finance" created by Laws 1921, p. 394, is the same as Bank Commissioner, and has the same liabilities, duties, powers and jurisdiction. These titular designations are synonymous. (5) The Bank Commissioner, or one of his subordinates, was a person to whom the book of accounts might be delivered within the meaning of the statute. State v. Plotner, 283 Mo. 83. (6) It was immaterial that there had been six recent examinations of the bank shortly before the discovery of the false entries. The entries were made for the very purpose of preventing detection.

WHITE, J.—The defendant was charged by information in the Circuit Court of Jackson County, with forgery in the third degree, under Section 3438, Revised Statutes 1919. On September 26, 1924, a jury returned a verdict finding him guilty, and assessed his punishment at imprisonment for two years in the State penitentiary. The trial court thereupon rendered judgment, from which defendant appealed.

The facts in this case are practically the same as those shown by the evidence and stated in the companion case, State v. Morro, *ante*, page 98, in which defendant was convicted of embezzlement.

The information charged that March 31, 1923, the International Life Insurance Company, a corporation, deposited in the Corn Exchange Bank, a moneyed corporation, a certain check for $5,000, dated March 29, 1923, drawn by said company upon the American Savings Bank of Springfield, Missouri, payable to the Corn Exchange Bank, for a certificate of deposit payable to the order of said insurance company in that amount; and that there was then issued and delivered to said insurance company by said Corn Exchange Bank a certificate of deposit, No. 107, dated March 31, 1923, for $5,000, payable six months after date with interest at the rate of three per cent per annum, signed by Richard Morro, cashier, said Morro being then cashier of said Corn Exchange Bank. That

the said check in due course was paid, and that said Richard Morro, March 31, 1923, feloniously and with intent to defraud said Corn Exchange Bank, made certain false entries in a book of accounts kept by said Corn Exchange Bank, some pages of which were designated "Certificate-of-Deposit Register," and intended by said Corn Exchange Bank to be delivered to persons dealing with said Corn Exchange Bank, to-wit, the Bank Commissioner of the State of Missouri, his deputy and examiners, for the purposes of examination, which false entries were as follows: "A. G. Barter," "3-15" "107" and "100," each of said entries being made on the same leaf and page of said book of accounts, which said entries meant, and by the said Richard Morro were intended to mean, that a person named A. G. Barter, on the 15th of March, 1923, deposited in said Corn Exchange Bank the sum of $100, and that certificate of deposit No. 107 had been issued and delivered by said Corn Exchange Bank to said A. G. Barter in the sum of $100, and by such false entries pecuniary credit of the said Barter in the sum of $100 purported to be created, and the pecuniary credit of the holder of said Certificate of Deposit No. 107, to-wit, the International Life Insurance Company, purported to be diminished and affected.

The evidence introduced by the State tended to show the facts stated in the information. The check drawn by the International Life Insurance Company, payable to the Corn Exchange Bank for $5,000, was introduced, stating on its face that it was for certificate of deposit; it showed that it was duly paid through the Springfield Clearing House. Also, the certificate of deposit, No. 107, dated March 31, for $5,000, as described in the information. Also, the sheet from the Certificate-of-Deposit Register, showing the entry alleged to be forged, stating that Certificate No. 107 was issued to A. G. Barter, March 15, for $100.

Mr. Biggerstaff, on behalf of the State, testified that June 14th or 15th, while he was examining the books of

the bank, the defendant admitted that he made those false entries, issued the certificate to the International Insurance Company, and confessed to other shortages attributed to him. A signed and sworn statement by Richard Morro was introduced in evidence, whereby he admitted, among other things, that the entry of Certificate of Deposit No. 107, March 15, 1923, to A. G. Barter, for $100, was made by him, and that no such certificate was issued. On this evidence he was found guilty, as stated, and appealed.

I. It is first claimed by appellant that no offense was proved under the statute; that whatever act was committed by the defendant was not covered by the terms of Section 3438, Revised Statutes 1919, which is as follows:

<span style="float:left">Statutory Offense.</span>

"Sec. 3438. Every person who, with intent to defraud, shall make any false entries, or shall falsely alter any entry made in a book of accounts kept by any moneyed corporation within this State, or in any book of accounts kept by any such corporation or its officers, and delivered or intended to be delivered to any person dealing with such corporation, by which any pecuniary obligation, claim or credit shall be or shall purport to be created, increased, diminished or discharged, or in any manner affected, shall, upon conviction, be adjudged guilty of forgery in the third degree."

In the case of State v. Plotner, 283 Mo. 83, we held that an entry very similar to the one under consideration here constituted a crime defined by that section. The appellant insists that the analysis of the section in that case was *obiter,* and in an elaborate argument asks reconsideration of the matter. In the Plotner case (l. c. 92), we stated what it is necessary to prove in order to establish guilt, under the statute. In view of the argument of the appellant we will attempt further to analyze it. The statute shows that it describes the crime against which it is leveled, and also the circumstances under which the crime may be committed.

The crime consists of (a) making a false entry in a book; (b) with intent to defraud; (c) whereby a pecuniary obligation, claim or credit shall purport to be created, increased, diminished or discharged. The section then describes the kind of a book in which the entry may be made; (d) it must be a book of accounts kept by a moneyed corporation; and (e), delivered or intended to be delivered (f) to a person dealing with said corporation.

All these elements, the criminal acts and the kind of record in which the false entry is made, must be established by sufficient evidence in order to authorize a conviction.

It is not disputed that the evidence sufficiently shows a false entry, with intent to defraud, in a book of a moneyed corporation, was made by the defendant. It is argued that the proof fails in particulars relating to the kind of a book in which the entry was made; that the certificate-of-deposit register was not intended to be delivered to any person dealing with the bank, and that the Bank Commissioner of the State, to whom the information alleges it was to be delivered, was not a person dealing with the bank.

Person Dealing with Bank.

Appellant first calls attention to the general rule that a criminal statute should be strictly construed, and its meaning not extended or enlarged by judicial construction so as to embrace offenses or persons not plainly within its terms. The section has been on the statute books since the revision of 1845. It is contended that the Bank Commissioner was not an officer known to the law of Missouri at that time, nor was there any other office of like character to which the terms of the statute could apply; therefore, it could not have been the intention of the Legislature, in the use of the expression, "person dealing with the bank," to include an official whose duty it was to examine banks.

Statute Embracing New Officer.

The rule is that where a statute deals with a genus, and a species of that genus afterwards comes into exist-

ence, the language of the statute generally shall be extended to the new species. [36 Cyc. p. 1113; State v. Cleveland, 83 Ohio St. 61; Daniels v. State, 150 Ind. 348; Walters v. Waggener, 208 Pac. 753.] It was said in the Indiana case, supra, also quoted in the later case of McCleary v. Babcock, 169 Ind. 228, l. c. 240:

"The language of the statute is generally extended to new things which were not known and could not have been contemplated by the Legislature when it was passed. This occurs when the act deals with a genus, and the thing which afterwards comes into existence is a species of it."

A "person dealing with the bank," is a general expression, and the Bank Commissioner, if he can be considered as a person dealing with the bank, would come within the terms of the statute, notwithstanding his existence and function as bank commissioner was not in contemplation by the Legislature when the act was first passed.

It is argued further that persons dealing with the bank must be those directly affected by the particular false entries complained of, and unless the books are intended to be delivered to such person they do not come within the meaning of the statute.

**Persons Directly Affected.**

That is not the way the statute reads. If the false entry is made in any book whereby any pecuniary obligation, claim or credit shall be created, etc., or in any manner affected, and if that book is delivered or intended to be delivered to *any* person dealing with the bank, the crime is complete. It does not matter whose credit is affected, nor whose pecuniary obligation is purported to be created, or changed. It is not necessary that it should be a person dealing with the bank whose credit or obligation is purported to be affected; it may be that of some officer of the bank, or of the bank itself, and involve its reputation for solvency. We have no right, by construction, to alter from their natural significance these plain terms of the statute, *"any pecuniary obligation," "in any manner affected."*

No doubt a person contemplating the purchase of the bank would be a person dealing with the bank, and the books are kept for delivery to such person. Banks are bought and sold like other property, and a purchaser of a bank would not regard a trade as complete until the books were delivered along with the other assets. The statutes are so strict in requiring periodical examinations of the bank by an officer created for that purpose that, a false entry, if it deceives him, would be just as effective in consummating a criminal purpose as it would in deceiving any other person dealing with the bank. So, it is not the apparent purpose, nor within the terms of the statute to limit the offense to an entry in a book to be delivered to the person directly affected by it.

II. Is the Bank Commissioner a person dealing with the bank? In the Plotner case we held that he was. The appellant quotes from the opinion in that case where it is said that a person dealing with the bank **Bank Commissioner.** could not be one representing the bank, such as an officer of the bank, but must be some person representing the other side.

The Bank Commissioner does not represent the bank. He represents the State of Missouri; he examines the bank for the purpose of protecting the citizens of the State who may have deposits in a bank. He is a representative of all dealers with the bank. The very purpose of his office is to protect, not merely stockholders, but all persons who have business with the bank, particularly the depositors. There is no aspect of his office in which it could be said that he is not a person dealing with a bank when he goes to examine its condition.

The only meaning which appellant allows to the expression "deal with" is "to traffic in." He would limit the person dealing with the bank to a customer, depositor, borrower, and purchaser of exchange, etc. The intransi- **To Deal.** tive verb "deal" is not so restricted. Corpus Juris (vol. 17, p. 1154) gives these adjudicated definitions of it: "To act between two persons; to in-

tervene; to have to do with." The Century Dictionary gives as its primary meaning: "to engage in mutual intercourse, or transactions of any kind, have to do with a person or thing, or to be concerned in a matter." Webster's International Dictionary furnishes these definitions: "To have to do; to be concerned; or to be occupied (with or in); as 'he deals with serious affairs;' 'they deal in politics.'" "To treat, act, do (by or with)."

When the Bank Commissioner examines a bank and takes possession of it, as the law authorizes him to do, he certainly is a person dealing with it, under such definitions.

III. It is further claimed that a case was not made out because the book in which this false entry was made was not delivered or intended to be delivered to any person dealing with the bank. As we ex-

Book Intended to be Delivered. plained in the Plotner case, the duty of the Bank Commissioner is set out in the statute. Section 11689, Revised Statutes 1919, requires him or one of his deputies to visit and examine every bank and trust company in the State once a year. What he must do in making such examination is specified in detail. It is a matter of common knowledge that when he, or one of his examiners, has a bank under examination, he is in absolute and exclusive possession and control of all the books of the bank. Section 11700, Revised Statutes 1919, provides conditions under which the Bank Commissioner may take possession of the *business and property* of the bank, and administer its assets. Thus, the Bank Commissioner, in making an examination, must take possession of the books for that purpose, and if his examination shows a situation which justifies it he extends his possession to the property and business. The term "delivery" implies, not a change of title, but a change of possession or control. [See Words & Phrases, *Deliver*.] The books of the bank showing its condition, its business, are kept for the purpose, among other things, of delivery to the Bank

Commissioner when he makes his yearly visit. As we pointed out in the Plotner case, depositors and stockholders have a right to inspect the books of the bank, but such books are not delivered to them. In making such inspection they remain strictly under the control and in the possession of the bank. But that is not the case of the Bank Commissioner. For his purposes he has exclusive possession and control, and necessarily must have it in order to make his examinations.

Finally, we must construe the statute to give effect, if possible, to the intention of the Legislature. The fraud which evidently they had in mind was that perpetrated by making false entries in the books so as to affect the apparent financial condition of the bank.

The only question raised on this point is in relation to the kind of a book in which the entry must be made. Appellant claims that the pass books are the only books which would meet the requirements of the statute because they are delivered to the customers affected by the false entry. If a pass book were under consideration here, undoubtedly we would have the argument presented that it does not come within the statutes because it is not *kept* by the bank. It is kept only in the sense that the bank makes the entries in it, while it actually remains in the possession of the customer. If the statute applied to nothing else than pass books it would be useless as a working regulation to prevent fraud in the manipulation of bank books. The frauds inducing bank failures usually are covered up and concealed from the Bank Commissioner by just such false entries as are under consideration here. We cannot presume that the Legislature intended to make the statute inoperative by having it construed as a mere gesture, an expression of the ineffectual sentiment of the legislators in condemning fraudulent entries in bank books. We must construe the statute by what it says, gather the intention of the Legislature from the language actually used. We construe it strictly in every particle of

State v. Morro.

the language defining the crime, the criminal intent, and the act performed in the accomplishment of that intent. We construe in accordance with common sense the language describing the circumstances under which the crime may be committed.

IV.   It is further claimed that there was no proof of the *corpus delicti* independent of the extra-judicial confession of the defendant.   Error also is assigned to the admission of the exhibits, showing the false entry, the check, certificate of deposit, etc., because of insufficient identification; also, to the testimony of Moore, cashier, who succeeded the defendant in charge of the Corn Exchange Bank, and explained the meaning and effect of certain entries, including the entry of certificate No. 107, which is the subject of this charge.   It is further asserted that the court erred in admitting evidence to show the defendant's confession of shortages covered up and concealed by his manipulation of the books.   All these objections were fully met in the companion case, *ante,* page 98, and require no further consideration here.

Evidence.

It is also objected that the evidence introduced in this case included the same evidence that was offered in the case of embezzlement.   These other and additional crimes all were connected and linked together with the particular crime charged here.   There were a number of forgeries to conceal a number of embezzlements.   The proof of other forgeries was admissible for the purpose of showing intent; and the evidence of other embezzlements was admissible as a part of the transaction in each particular forgery.   [State v. Patterson, 271 Mo. l. c. 110; State v. Hill, 201 S. W. l. c. 60; State v. Plotner, supra.]

Other
Forgeries
and
Embezzlements.

V.   It is contended that the court committed error in excluding evidence offered by the defendant to show six examinations of the books of the bank, made in the

year prior to the discovery of the false entry in this case. This was offered for the purpose of refuting the evidence to prove false entries and the defalcations of the defendant. There was no error in the ruling. The false entries were made by the defendant for the purpose of concealing his embezzlements, and had that effect. They were discovered only by outside, extraneous evidence. The records did not reveal them, and prior examinations would have revealed only what the books showed. There was no offer to prove that such examinations would show anything different from what was already before the jury.

*Prior Examinations.*

It is further claimed that the court erred in excluding evidence offered by defendant to show that he remained in the bank as an employee after his alleged confession. No officer or director of the bank, who remained in control after the shortage was discovered, was sworn on that subject. One Mr. George W. Neumer testified that he was one of the first directors of the Corn Exchange Bank, and that he remained in connection with the bank until January, 1923. The false entry in this case was made March 31st following. The witness was permitted to say that Morro was at the bank during the years 1921, 1922, and 1923. Defendant then offered to prove that for two months subsequent to June 15, 1923, the date of the alleged confession, Morro was in charge of the cashier's window at the Corn Exchange Bank with the knowledge and consent of the directors, and with the knowledge and consent of Mr. Wayland, the Clearing House examiner. This was objected to because irrelevant, and the objection sustained. It was offered for the purpose of contradicting appellant's confession. The defendant cites the case of State v. Powell, 258 Mo. 239, where it was held error for a trial court to exclude evidence tending to impeach an alleged confession of the defendant. In that case there was evidence tending to show that a confession was improperly obtained, and it was held

*Impeachment: Retention of Defendant as Cashier.*

proper to admit evidence for that purpose. Here the written confession of the defendant was signed and sworn to on the 18th day of September, 1923. It is not denied that the defendant wrote it and swore to it, nor was it denied that he made a number of oral confessions to Biggerstaff. There was no evidence of any sort tending to show that the sworn statement and other statements were not voluntary, or that the defendant was under duress or compulsion of any sort when he made them.

It is urged that the evidence was competent because if the directors of the bank heard his confession of shortage they naturally would not have retained him for two months. The bank and its directors are not parties to this proceeding. The State of Missouri is the party. Any act or circumstance tending to show an admission by the bank or its directors favorable to defendant would not be binding upon the State. If the directors of the bank chose to condone the offense or ignore it, their action does not affect the State's case.

If the evidence were offered for the purpose of impeaching the witnesses who swore to the defendant's confession it was not so stated by the defendant's counsel, and no foundation was laid for it by interrogating the witness sought to be impeached. So, as the matter is presented in the record, we are unable to say that the court erred in excluding the evidence.

VI. Error is assigned to the giving of Instruction 2, by which the court told the jury that evidence had been introduced "as to other entries, and as to their falsity and transactions connected with them, other than the entries charged in the information," and the jury were instructed that such evidence could not be considered by them as evidence that the defendant made the entries, complained of in the information, and it could be considered only in determining the intent of the defendant. It is argued that the part of the instruction quoted above assumes that the other entries

*Instruction.*

313 Mo. Sup.—9.

were made, and were false. We do not think the jury could so understand it. The direction is to evidence *"as to other entries and as to other falsity."* In that sentence *"as to"* means *"relating to,"* or *"tending to prove."* The instruction does not say evidence *of* other entries and evidence *of* their falsity. The State's attorney would hardly have the hardihood to stand before a jury and tell them that the court instructed them that other entries were false. The test of whether an instruction, awkwardly worded as his is, would be erroneous, is whether it would mislead the jury. We do not see how it could do so in this instance.

We find no error in the record authorizing a reversal. The judgment is, therefore, affirmed. All concur.