THE STATE v. W. F. ARNETT, Appellant.—92 S. W. (2d) 897.

Division Two, March 21, 1936.

*John P. Moberly* and *Phil M. Donnelly* for appellant.

*Roy McKittrick*, Attorney General, and *Covell R. Hewitt*, Assistant Attorney General, for respondent.

WESTHUES, C.—On October 26, 1933, an indictment was filed in the Circuit Court of Crawford County, Missouri, charging appellant with the crime of forgery in the third degree, as defined in Section 4192, Revised Statutes 1929 (Mo. Stat. Ann., p. 2945). The particular charge was that appellant, as cashier of the Crawford County Farmers' Bank, had, with intent to defraud the bank, made five false entries in a book of account, commonly called a depositor's passbook. The total amount of these items was $422.40, and the items on their face showed that Mr. and Mrs. H. M. Keyes had deposited that sum in the bank. Upon a trial appellant was convicted and sentenced to four years' imprisonment in the penitentiary. From this sentence he appealed.

The evidence disclosed the following state of facts: Appellant had for many years been cashier of the Crawford County Farmers' Bank, located at Steelville. Mr. and Mrs. Keyes lived in the State of Illinois. Keyes had money invested, represented by notes and mortgages signed by persons living in Crawford County. Keyes had authorized appellant to collect whatever was due on these notes, either principal or interest, and to reinvest the proceeds thereof for Keyes. Appellant had, by virtue of his agency, handled Keyes' financial business in Crawford County for about ten years. Keyes was given a passbook in which was entered the amounts of cash appellant had collected and deposited in the bank. This passbook was sent to the bank

at various times to be balanced. During the month of August, 1932, appellant made the following entries in the passbook of Keyes, which were the basis of this prosecution: August 22—Worley, $64; August 23—May, $49.60; August 23—Reeves, $80; August 25—Coleman, $32; August 29—Ives, $196.80. As explained by the evidence the names appearing opposite the dates represented the persons who had paid the amounts indicated, as payments of interest or principal on notes belonging to Keyes. The amounts set out above, while entered in the customer's passbook, did not appear in any of the records retained by the bank. This passbook was sent to Keyes, by appellant, with the above entries and a letter informing Keyes that he had collected the amounts indicated and also that Keyes now had a nice balance in the bank which he would not need and appellant would invest some of the money as he had done on prior occasions. Later the bank became insolvent and its assets were taken over by the State Finance Department for the purpose of liquidation. Keyes filed a claim with the Deputy Commissioner of Finance for the amounts as evidenced by the entries above set forth. Appellant admitted that he had made the entries referred to without any deposit having been made. His explanation was as follows:

"Q. Are you the Defendant in this case? A. Yes, sir.

"Q. You have seen then what is deemed the pass book of Mr. and Mrs. Keys; have you? A. Yes, sir.

"Q. Did you make those entries in that book, the five last entries? A. Yes, sir.

"Q. Had you at that time collected the interest that is there recorded? A. No, sir.

"Q. Why did you make that entry? A. To keep Harry Keyes satisfied as a valid customer of the Crawford County Farmers Bank, and my judgment told me it was to the best interest of the bank to make the entries on their book at that time. On account of the awful condition that the country was in during the summer and fall of 1932, I wanted to keep Keyes satisfied and not have him withdraw any money from the bank."

█ Appellant filed a motion to quash the indictment and has preserved for our review the sufficiency of the indictment to state an offense. His principal contention on that point is that the indictment failed to charge that the deposits, represented by the alleged book entries, were not actually made. It is urged that the sufficiency of the indictment in this case should be governed by the rules of law applicable to indictments for perjury and false pretenses. In other words, appellant says the indictment should have in effect stated that in truth and in fact no deposits were made as represented by the alleged false entries; that as worded, if the allegations of the indictment be taken as true, no offense was charged. To this we cannot agree. The statute, Section 4192, supra, denounces the offense as

forgery. The constituent elements thereof are as stated in State v. Morro, 280 S. W. 697, 1. c. 699, 313 Mo. 114, as follows:

"The crime consists of (a) making a false entry in a book; (b) with intent to defraud; (c) whereby a pecuniary obligation, claim, or credit shall purport to be created, increased, diminished, or discharged. The section then describes the kind of a book in which the entry may be made; (d) it must be a book of accounts kept by a moneyed corporation; and (e) delivered or intended to be delivered (f) to a person dealing with said corporation."

The indictment in this case followed the wording of the statute and contained every essential element of the crime. With regard to the question now being discussed it charged that appellant, as cashier of the bank, willfully, unlawfully and feloniously, with intent to defraud the bank, made certain false and fraudulent entries of deposits. The indictment set forth the entries alleged to be false. Is this language sufficient to charge that the deposits, as represented by the entries, were in fact not made? We think so. Webster's New International Dictionary defines the word "false" to mean, "not according to truth or reality, not true, erroneous, incorrect." The indictment, therefore, charged that the entries were not true. It also charged that the entries were made feloniously and with intent to defraud. If they were so made they could not have been made honestly or mistakenly, but falsely. We, therefore, rule that it was not necessary for the indictment to allege that in truth and in fact no deposits were made as represented by the entries mentioned. Such an allegation would have been nothing more than repetition of what had already been charged. In State v. Bell, 212 Mo. 111. 111 S. W. 24, 1. c. 25, an information for forgery is set forth in full, which was approved. The indictment in this case is more definite and certain than the information in that case.

Appellant assigned as error the giving of Instruction No. 1, because it did not require the jury to find that the deposits, as alleged in the passbook, were not in fact made. The instruction required the jury to find, before authorizing a conviction, that the entries were false and were made with the felonious intent to defraud. What we have said disposing of the sufficiency of the indictment answers this contention.

Appellant also urges that it was error for the trial court to permit the Assistant Attorney General to make the opening statement of the case to the jury. Section 3681, Revised Statutes 1929 (Mo. Stat. Ann., p. 3227), prescribes the order of trial. This section provides in part, that after the jury has been sworn to try the case the trial may proceed in the following manner: "First, the prosecuting attorney must state the case and offer the evidence in support of the prosecution." The intent and purpose of the statute is to require the State, through its prosecuting officials, to make a statement of

the facts intended to be introduced in evidence against the accused. This is required for the information of the defendant and the jury. The statute merely prescribes a mode of procedure and the term "prosecuting attorney" includes any attorney who is lawfully assisting in the prosecution. It was expressly so held in State v. Stark, 72 Mo. 37. [See, also, State v. Taylor, 98 Mo. 240, l. c. 243, 11 S. W. 570, and State v. Kowertz, 324 Mo. 748, 25 S. W. (2d) 113, l. c. 117 (13).]

■ The assignments of error pertaining to the admission of evidence read as follows:

"'3. The court erred in admitting evidence relative to the passbook and account of Alice Schwieder and in overruling defendant's motion to strike out the same.

"'4. The court erred in admitting in evidence the alleged passbook and leaves from the loose leaf ledger relative to the alleged account of Mr. and Mrs. H. M. Keyes and in overruling defendant's motion to strike out the same.'"

These assignments are insufficient to raise any question for our review. We cannot determine therefrom what reason appellant had in mind as to why the evidence was incompetent. Having failed to assign any reason we have nothing before us for review. [State v. Buckner, 80 S. W. (2d) 167, l. c. 169, 170 (10, 11); State v. Ryan, 50 S. W. (2d) 999, l. c. 1000 (6, 8); State v. Shawley, 334 Mo. 352, 67 S. W. (2d) 74, l. c. 86 (23, 25); State v. Majors, 329 Mo. 148, 44 S. W. (2d) 163, l. c. 166 (5).] Under the authorities cited the following assignment was likewise insufficient.

■ "'6. The court erred in refusing defendant's Instruction A, being the only instruction refused.'"

By Instruction No. 3 the jury were told that the intent with which an act was done may be inferred from all the facts and circumstances surrounding the act and must be determined from the evidence given in the case. Instruction No. 4 was an instruction on circumstantial evidence. Appellant contends that these instructions should not have been given because there was no circumstantial evidence in the case. The intent with which appellant made the entries, upon which the charge was based, was the main issue in the case. The State relied to a large extent upon circumstantial evidence to establish the fraudulent intent. If a case partially depends upon circumstantial evidence it is proper, but not mandatory, to instruct thereon. [16 C. J. 1008, sec. 2433.] It is certainly not harmful to a defendant to so instruct in such cases. These instructions are favorable to a defendant. As a rule defendants complain where such instructions are not given. [See cases cited in note 6, 16 C. J. 1009. See, also, State v. Jackson, 186 S. W. 990, l. c. 993 (4); State v. Shelby, 333 Mo. 610, 62 S. W. (2d) 721, l. c. 724 (4).]

■ Instruction No. 5 concerned evidence of other entries made by appellant. Appellant contends that the instruction was erroneous because there was no evidence that appellant defrauded or intended to defraud anybody by such entries; also that the instruction assumed that the entries in Keyes' passbook were made. Suppose the instruction did assume, which we do not think it did, that the entries in Keyes' passbook were made, in addition to the State's evidence, tending to establish that fact, appellant testified that the entries were made by him. Not an iota of evidence was introduced to the contrary. It was an assumed fact in the case. Appellant said in substance, yes, I made the entries, but not with a fraudulent intent. The alleged assumption in the instruction, if present, was harmless.

■ The State introduced evidence that appellant had made entries in other passbooks which did not correspond with the records in the bank. The instruction informed the jury that such evidence could only be considered in determining the intent of the defendant. This was entirely proper. The instruction was in substance the same as the instruction approved in the case of State v. Morro, 313 Mo. 114, 280 S. W. 697, l. c. 701 (11, 12). The issues in the Morro case were identical with the issues in the case under consideration.

■ Instruction No. 6, complained of by appellant, informed the jury in substance, that even if they found and believed that appellant had made the entries, as charged, and that they were false, but that appellant did not intend thereby to defraud the Crawford County Farmers' Bank, then it was their duty to acquit appellant. This instruction was favorable to appellant. The only complaint made of this instruction was that it omitted to place upon the State the burden of proving appellant guilty beyond a reasonable doubt. The trial court gave an instruction on the burden of proof telling the jury that appellant was presumed to be innocent until proven guilty beyond a reasonable doubt and that such burden rested upon the State. This was sufficient and it was not necessary to repeat the term "beyond a reasonable doubt" in other instructions. [State v. Ross, 300 S. W. 785, l. c. 786 (3, 4); State v. Hembree, 295 Mo. 1, 242 S. W. 911, l. c. 914 (6); State v. Buckner, 335 Mo. 229, 72 S. W. (2d) 73, l. c. 76 (7).]

Instructions Nos. 9 and 10, on the credibility of witnesses and reasonable doubt, were questioned by appellant in his motion for new trial. We have examined these instructions and find them in approved form. The phrase complained of in Instruction No. 10 is, that "a doubt to authorize an acquittal . . . ought to be a substantial doubt touching the defendant's guilt, and not a mere possibility of his innocence." This is a correct declaration of law, long approved by this court. [State v. Smith, 332 Mo. 44, 56 S. W. (2d) 39, l. c. 42 (6); State v. Temple, 194 Mo. 237, l. c. 249 (4), 92 S. W.

869; 16 C. J. 993, sec. 2401.] ■ The instruction on the credibility of witnesses was questioned because it informed the jury that if any witness had willfully sworn falsely to any material fact the jury could disregard the whole or any part of the witness's testimony. It is urged that the jury could have applied this instruction to no other witness than the defendant. There is nothing in appellant's testimony or in the record to justify this assertion. Appellant attempted to impeach the evidence of a number of witnesses. No attempt was made to impeach the testimony of appellant. The contention is, therefore, without merit.

■ The question of the sufficiency of the evidence to sustain a conviction was presented in a number of assignments of error. The intent with which the entries were made in the passbook was the main disputed issue. It was not developed by the evidence that the bank was actually defrauded. It is sufficient, under the statute, if the entries were made with the intent to defraud. We are of the opinion that the State introduced sufficient evidence to sustain the charge. The fact that the cashier did not make the same entries in the bank books as in the customer's passbook was evidence from which an evil intent could be inferred. The entries in the passbook certainly created an obligation against the bank. A passbook is the only evidence a customer of a bank has of the amount of deposits made. Standing alone and unexplained, entries in a passbook would be sufficient to support a judgment in favor of its owner against a bank which had made the entries. A jury in the trial of such a case is not bound to believe the explanation. So in this case, appellant's explanation as to why he made the entries was not binding on the jury. The issues in this case were similar to the issues in the case of State v. Peebles, 337 Mo. 973, 87 S. W. (2d) 167, recently decided by this court, where we held the evidence sufficient to support the charge. The passbook described comes within the terms of the statute as a book intended to be delivered, and created an obligation on the bank. A customer's passbook is a book of account. All entries made therein are made by the bank officers and the book is intended to be delivered to the customer. Every element of the crime charged was supported by evidence in this case. [See State v. Morro, 313 Mo. 114, 280 S. W. 697, l. c. 698, 699 (1, 2).]

■ In assignments 16, 17, 18, 19, appellant argues at length that the verdict of the jury was the result of passion and prejudice. It is stated that this court should take into consideration that the case was tried in an atmosphere antagonistic to appellant. We are asked to take judicial notice of these facts. Intermingled with these suggestions are complaints with reference to arguments made by the prosecuting officials. As to the latter we have carefully examined the record and find that appellant made only two objections during

the argument complained of and both objections were promptly sustained by the trial court. During the opening statement an objection was made and it was sustained. The trial court having sustained all of appellant's objections there is nothing upon which to base error. The argument was not such that the trial court should have of its own motion taken some action.

We cannot take judicial notice of the existence of an antagonistic feeling against a defendant. When properly applied for the law entitles a defendant to a change of venue in such cases. No such application was made in this case as against the inhabitants of the county. At appellant's request a special judge was called to try the case. It is, therefore, evident that the attorneys for appellant did not overlook the question of a change of venue. The assertions in the motions for a new trial do not prove themselves. There is nothing in the record in this case that would indicate any prejudice against appellant. Appellant suggests that, because he received a punishment of four years' imprisonment, this court ought to say that the jury was prejudiced. This, standing alone, does not show prejudice. [State v. McGee, 336 Mo. 1082, 83 S. W. (2d) 98, 1. c. 109 (41).] The punishment imposed was authorized by statute and is not the maximum punishment. The punishment to be inflicted in criminal cases is primarily a matter for the jury and the trial courts.

The trial court permitted appellant to file amendments to his motion for new trial. In these amendments appellant presented to the trial court the question of the qualification of four jurors, and also alleged that the jury had separated after the case was submitted to them. As to the qualification of the jurors, if we were to concede the truth of all the evidence in support of the motion, appellant would be in no position to complain. One of the jurors is alleged to have made a statement, after the trial of the case, that if appellant was tried before the same jury on another charge pending the jury would probably give him seven years. No showing was made that this juror, before the trial of the case, had formed or expressed an opinion with reference to the case, or that he was prejudiced against appellant. Many things may have happened, after the trial, tending to prejudice the juror. The record does not show that appellant examined this juror on *voir dire* examination. Having been accepted without being questioned appellant is in no position to complain after verdict. Another of the jurors, it was shown, had advised the wife of his half-brother to file a claim against the bank for the amount of her deposit with the bank. A third juror, it was shown, was a member of a church board. After the bank closed, the financial condition of the church was discussed. A member of the board mentioned that appellant had advanced $150 which the church ought to repay. The juror is alleged to have expressed doubt as to the church's liability because the money

of the church was lost in the bank and the bank or appellant had the money. This occurred prior to the time appellant was indicted. The fourth juror, whose qualification was questioned, is alleged to have stated to other jurors, after the trial, while discussing the case: "I don't know, but I know I had some money in the bank and I don't know what became of it, and anyway it's gone." Granting all that to be true, as above stated, the record fails to show that appellant questioned these jurors on *voir dire* examination. The facts, as disclosed by the evidence, were not, as a matter of law, sufficient to disqualify the jurors. Had appellant questioned these jurors and they had answered the questions untruthfully, appellant would be in a different position. Having failed to question them their qualification cannot be impeached on a showing as was made in this case.

 The evidence in support of a charge that the jury separated, affirmatively shows that they did not separate within the meaning of the law. In the case of State v. Shawley, 334 Mo. 352, 67 S. W. (2d) 74, 1. c. 88 (29-31), this question was discussed at length. Many authorities were reviewed from Missouri and other jurisdictions. The conclusion reached was, "that the mere physical separation of the jury for sleeping purposes in case of necessity or for their better accommodation does not violate a statute forbidding a separation, provided they remain in the custody and under the surveillance (not necessarily ocular) of the officer in charge of them." In this case it was shown that there was no adequate room in the local hotel for the accommodation of the jury. They were, therefore, taken to a rooming house for the night. The only persons who stayed at this place on the night in question were the members of the jury, a deputy sheriff and the members of the household. Eleven of the jurors occupied rooms upstairs and the officer in charge of them and one juryman occupied a room downstairs. It is important to note that the trial had not been concluded and the case had not been submitted to the jury for deliberation. Evidence in support of the charge was heard by the trial court. It disclosed that the members of the jury did not communicate with anyone other than the deputy sheriff and members of the jury. The evidence did not disclose that the jury had had an opportunity for outside communication. The evidence fails to even cast a suspicion of misconduct, but affirmatively shows its absence. The trial court, therefore, properly denied appellant a new trial on this ground. See State v. McGee, 336 Mo. 1082, 83 S. W. (2d) 98, 1. c. 102 (1-3), for a full discussion of this question.

 Attorneys for appellant, in their brief and in their oral argument, earnestly insisted that the conviction of appellant and the punishment imposed was a gross miscarriage of justice. We have carefully considered all of the points raised by counsel on this appeal. The record disclosed that appellant had a fair trial. He was rep-

resented by industrious, able counsel. During the trial the trial court was eminently fair to appellant in his rulings on disputed questions. The verdict is supported by substantial evidence. We are not here to pass upon the guilt or innocence of appellant. That question, under our system of jurisprudence, was for a jury. Having concluded that no reversible error appears in the record the judgment of the trial court must be affirmed. It is so ordered. *Cooley* and *Bohling*, *CC*., concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.