STATE v. WILLIAM NENNINGER, Appellant.—No. 39395.—188 S. W. (2d) 56.

Division Two, June 11, 1945.

*Homer F. Williams*. and *Rush H. Limbaugh* for appellant.

54

56

*J. E. Taylor,* Attorney General, and *W. Brady Duncan,* Assistant Attorney General, for respondent.

■ WESTHUES, C.—Appellant was convicted at the March term of the circuit court of Bollinger county, Missouri, of manslaughter and sentenced to imprisonment in the penitentiary for a term of five years. He appealed.

Appellant, at the time of the homicide, was operating a tavern and dance hall located at a crossroad near Lutesville, Bollinger county, Missouri. On Saturday night, April 18, 1943, the victim of the homicide, Elmer Holweg, was present at appellant's tavern where a dance was in progress. He created a little disturbance by throwing matches on the floor and by kicking a beer bottle across the room, all of which interfered with the dancing. Appellant informed Holweg that he would have to stop his misconduct or go home. He remained until about 10:00 P. M. There is evidence in the record that he was guilty of a few other small misdeeds which need not be mentioned. The evidence tended to show that there was bad feeling between appellant and Holweg. Witnesses testified of threats having been made by Holweg against appellant and by appellant against Holweg. The following day, Sunday, appellant went to the county seat and attempted to have Holweg arrested, but we learn from the record that he was informed by the prosecutor that there was not sufficient evidence to warrant an arrest. A witness testified that later on Sunday appellant made a statement to the effect that he failed in his attempt to have Holweg arrested, and that coupled with this statement was a

threat that he would take care of the situation. On Monday following, April 20, Elmer Holweg and his brother intended to get a load of hay from a nearby farm. As they drove along the roadway Elmer informed his brother that he was going to appellant's store, which was about a quarter of a mile distant, to get some tobacco. Appellant testified that Elmer came to his place of business on Monday morning and purchased some tobacco; that he noticed Elmer was not in a good mood; that after he sold him the tobacco he, appellant, went to the rear of the store intending to lie down because he was not feeling well. Appellant's living quarters were to the rear of the tavern. He testified that as he walked back Elmer said to him in substance, I came to settle our trouble; that he told Elmer to go on out that he did not want any trouble; that deceased replied, ''I'll show you'' and advanced toward him; that he was afraid Elmer would beat him to death because he had heard he carried ''knucks''; that Elmer was a strong boy and he was no match for him in a physical combat; that as Elmer neared he, appellant, picked up a revolver and when Elmer was about four feet from him he began to shoot and did not quit shooting until Elmer retreated and ran out of the building. Appellant then went to the county seat and informed the officers that he had shot Holweg. Holweg died at a hospital on the following Thursday at about 6:30 P. M. There were no eyewitnesses to the shooting.

Appellant briefed a number of points seeking a reversal of the judgment of conviction. At the trial self-defense was interposed as a justification for the shooting. When defense counsel made his opening statement to the jury outlining the evidence intended to be introduced he stated that there would be evidence that deceased carried ''knucks'' of which fact the defendant had knowledge. The trial court sustained the state's objection to this statement but added that the question would be reconsidered when the evidence was offered. The defense was permitted to introduce the evidence and appellant was permitted to testify he had heard that Elmer Holweg carried ''knucks''. The evidence being introduced, we hold appellant was not prejudiced. The ruling of the court sustaining the objection to the statement was qualified, therefore the jurors could readily understand that the evidence introduced was to be considered by them. After all, a jury is instructed to be guided by the evidence. Appellant received full benefit of this evidence and we must rule the point against him. State v. Curtner, 262 Mo. 214, 170 S. W. 1141, l. c. 1143 (3).

Next appellant assigned error to the action of the trial court in permitting a witness to testify that Holweg made a statement shortly before he died with reference to the homicide. The alleged statement was, ''Don't let him get by with this, because he shot me through the back.'' The trial court on objection struck out the first part of the above statement and instructed the jury to disregard it. Appellant briefed this point under nine subdivisions. We can confine

our discussion to a determination of whether the statement was admissible as a dying declaration. If so, then the court's ruling must be sustained and the question of whether it was admissible under the res gestae rule becomes immaterial. The statement was made about 3:00 P. M. on Thursday and death occurred about 6:30 P. M. of that day. The evidence revealed that Holweg, before the statement was made, was restless and in great agony; that he made a statement to the effect that he was going to die and a nurse replied, "You are a long ways from dead", whereupon the deceased replied, "No. I will be dead by four o'clock." The attending physician testified that deceased was doing very well until the morning of the date of death when there was a decided turn for the worse. The evidence of the doctor revealed that the bullet wound which produced death was located a little to the back and above the right hip joint and that this bullet lodged near a vertebra; that there was a wound on his head above the right ear about three inches in length, a bullet wound in his right arm just above the elbow and another across the back of his right hand in front of the knuckles. The doctor also stated that there was evidence of powder burns on deceased's hand and head. We think it is obvious that the statement made by Holweg was admissible as a dying declaration. See State v. Hughes, 344 Mo. 116, 125 S. W. (2d) 66, l. c. 68 (1), where the question of admissibility of dying declarations is discussed.

Appellant next urges that the trial court erred in not submitting the question of whether there was a sense of impending death on part of Holweg at the time the alleged declaration was made. In this appellant is correct. See State v. Custer, 336 Mo. 514, 80 S. W. (2d) 176, l. c. 178-181 (4-6). However, appellant is estopped from urging this point. In the trial of the case the court heard the evidence on this question out of the presence of the jury and held it admissible. The jury was then called and the state attempted to introduce the evidence as to Holweg's condition at and prior to the time the alleged dying declaration was made. Appellant then made the following objection:

"Your Honor, we desire to object to the offer of this evidence to the jury for the reason that, first, that it is the province of the Court to determine the admissibility of a declaration outside the presence of the jury;"

The court sustained the objection. How could a jury pass on the question of whether the declarant thought he was in a dying condition unless the evidence was introduced? A party to a lawsuit will not be permitted to take advantage of error of his own making. Again, we find that appellant briefed this point vigorously but we are unable to find any such assignment of error in his motion for new trial. A number of other points were briefed which we cannot consider because not mentioned directly or indirectly in the motion for new trial.

A hat, identified as that of deceased, was found near the defendant's building and was introduced as an exhibit. Appellant urges this was error. Appellant testified that he shot Holweg while he was in the building and that four or five shots were fired. The sheriff testified that he made a close examination and failed to find any bullet marks inside the building. The introduction of the hat in evidence was not ▇▇ error. It was a proper circumstance to be considered by the jury. A jury may have found that the shooting did not occur in the building. There is no merit in this contention.

It is urged that a docket of the Justice of the Peace, showing convictions of criminal offenses on part of Holweg, was erroneously excluded as evidence. The trouble with this assignment is that the docket of the Justice offered disclosed that the charge against Holweg in that case had been withdrawn. There was a reference in the order indicating that Holweg had been convicted on some other occasion, the nature of which charge was not disclosed. The offer was properly rejected. No judgment of conviction against Holweg was offered.

Appellant insists that it was error for the trial court to instruct on manslaughter. It is urged that the evidence justified a finding of murder or justifiable homicide on the ground of self-defense. Therefore the giving of a manslaughter instruction was prejudicially erroneous. This on the theory that appellant would have been acquitted except for the giving of this instruction. We do not agree. The jury by its verdict of guilty found that the shooting was not justifiable. Sec. 4844, R. S. Mo., 1939, Mo. R. S. A., reads in part as follows:

". . . and any person found guilty of murder in the second degree, or of any degree of manslaughter, shall be punished according to the verdict of the jury, although the evidence in the case shows him to be guilty of a higher degree of homicide."

That is the declared policy of this state. It has been followed in numerous cases. The question was considered at length in State v. Murphy, 341 Mo. 1229, 111 S. W. (2d) 132, 1. c. 137 (18-19). See also State v. Huett, 340 Mo. 934, 104 S. W. (2d) 252, 1. c. 262 (16).

The last point briefed is, that the sheriff in charge of the jury and members of the jury were guilty of such misconduct as to require a reversal of the conviction. The charge is that the jury separated and the sheriff and the jury, on the night of the first day of the trial, before all the evidence had been introduced, went about five miles from the county seat and participated in a fox chase. The trial court deemed the charge serious and rightly so. Evidence was heard at length and the jurors were called as witnesses. The following is, we think, a fair statement of what occurred. Court adjourned for the day. The trial was being held at Marble Hill, Missouri. After the jurors had eaten their evening meal, at about 7:00 o'clock, several persons met near the courthouse for the purpose of going fox hunting. A number of

dogs were placed in cars. The sheriff engaged in a conversation with the men intending to go fox hunting and the sheriff's dog was also placed in a car. Thereafter the sheriff asked several of the jurors if they desired to go out to the fox hunt. Being in the mood, they assented and two cars were procured. The sheriff drove one car and one of the jurors the other. All of the jurors and the sheriff, but no one else, went in these two cars. When they arrived at the scene of the hunt the jurors and the sheriff left the cars and went into a field or woods where a fire had been built. There they listened to the dogs. Only one person outside of the sheriff and the jurors was at the fire. The jurors testified that at no time was the case on trial referred to, or any fact in connection therewith mentioned, not even among themselves. The sheriff and jurors returned to the county seat in the cars at about 10:00 o'clock. While on their way to the fox hunt and while returning the occupants of the cars were in sight of each other except perhaps at a number of sharp curves in the roadway. That is the entire story.

It is the settled law in this state that separation of a jury before the case has been submitted is not ground for new trial if the state affirmatively shows that the jury was not subjected to any improper influence. State v. McGee, 336 Mo. 1082, 83 S. W. (2d) 98, l. c. 103 (1-3); State v. Schaeffer, 172 Mo. 335, 72 S. W. 518; State v. Schlie, 350 Mo. 924, 169 S. W. (2d) 348, l. c. 350 (2-4); State v. Shawley, 334 Mo. 352, 67 S. W. (2d) 74, l. c. 88 (29-31); State v. Arnett, 338 Mo. 907, 92 S. W. (2d) 897, l. c. 903 (24-25). It must be kept in mind that the evidence showed the jurors were separated only in so far as some of them rode in one car closely followed by another car in which the others were riding. We are of the opinion that the state in this case affirmatively showed that the jurors were not subjected to improper influence. There was no direct evidence to the contrary. The trial court was fully justified in ruling that no prejudice resulted from the indiscreet action of the sheriff.

Finding no prejudicial error in the record the judgment is affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.