STATE of Missouri, Respondent,

v.

Gus John TOLIAS, Appellant.

No. 47099.

Supreme Court of Missouri,
Division No. 2.

July 13, 1959.

Mark M. Hennelly, St. Louis, for appellant.

John M. Dalton, Atty. Gen., W. Don Kennedy, Asst. Atty. Gen., for respondent.

STORCKMAN, Judge.

The defendant, Gus John Tolias, was convicted in the Circuit Court of St. Louis of an assault with intent to kill without malice aforethought, § 559.190 RSMo 1949, V.A.M.S., and his punishment was assessed by the jury at imprisonment in the city jail for a period of nine months. His motion for a new trial was overruled and he was sentenced in accordance with the verdict. The defendant appealed but filed no brief. The case was submitted on the brief of the state alone.

In addition to the evidence of the state, there is testimony of the defendant who testified in his own behalf. The prosecution arose out of an altercation on Madison Street near its intersection with Eliot in St. Louis at about 11:00 p. m. on November 7, 1956. The evidence favorable to the verdict tended to show that Harry Madison and three other Negro youths had spent the evening at a community center, boxing and indulging in other athletic activities. Madison was fourteen years old and his companions, Joe Deering, Sammie Lee and Woodrow Jones, were about the same age or somewhat older. On the way to their homes, after the community center closed, they passed the home of defendant in the 2500 block of Mullanphy

The defendant, a young white man twenty-two years of age at the time of this occurrence worked with his mother, father and two brothers in a bakery business and he had lived with his family at 2513 Mullanphy all of his life. His father owned a 1954 Ford panel truck in which rolls, doughnuts and other bakery goods were usually kept. The truck was parked in the street near the defendant's home and when he arrived, the defendant saw two of the Negro boys along side of the truck and it appeared to him that they were trying to break in. These two were soon joined by their other two companions and a verbal

exchange occurred between them and the defendant. Accounts as to how this began vary. The boys contend the defendant asked them what they were doing, and the defendant testified that the boys accosted him by asking him what he was looking at. In any event, it appears that the defendant saw on the street a friend, Donald Krone, who lived near by, and went to join him. The boys then left going west on Mullanphy.

After the boys left, the defendant and Krone got into the defendant's 1952 Hudson automobile and went to a neighborhood tavern for white customers where they were joined by five other young men, all of whom got into the defendant's car. Before joining the group, one of the men got a shotgun from the trunk of his car and brought it into the defendant's automobile. Police officers testified that the defendant, after his arrest, told them that he drove to the home of another one who went into his house briefly and that the defendant presumed that he went in to get a gun, although the defendant did not see the gun.

The defendant then drove around with his six companions until they located the four Negro youths in a Negro neighborhood, not far distant. In the meantime, the boys had left their gymnasium equipment near the steps of one of their homes and at some time, not altogether clear, some of them had armed themselves with bricks. The defendant drove his car around the block and as it was passing the Negro boys the second time, one or more bricks were thrown at the automobile. Shots, described by sound as from a pistol and a shotgun, were fired from the automobile. The defendant conceded that he heard the blast from the shotgun fired from his automobile, but he did not know who fired it. He denied that he heard any other shots fired from his car.

The prosecuting witness, Harry Madison, was struck by a .32 caliber bullet which severed the spinal cord between the eighth and ninth dorsal vertebrae, paralyzing him

from that point down. One of the other boys was struck in the head by a pellet from a shotgun and another of the boys was shot in the leg. The defendant and two of his companions were jointly indicted on a charge of assault with intent to kill with malice aforethought.

■ Where no brief is filed by the appellant in a felony conviction, the court will review the assignments of error properly preserved in the motion for new trial and the formal parts of the record. State v. Swiney, Mo., 296 S.W.2d 112. We find no error with respect to the matters not required to be preserved in a motion for new trial. The indictment is sufficient and the verdict is in proper form and responsive to the issues. The defendant was granted allocution and the judgment and sentence are in accordance with the verdict.

In his motion for new trial the defendant charges that the court erred in not permitting him to show that Sammie Lee, a state's witness, had been convicted in a juvenile proceeding of stealing "in matters growing out of this case" and at the time of trial was confined in the juvenile institution in Boonville. The trial court sustained the state's objection when defendant's counsel sought to refer to the matter in his opening statement and also when he sought to cross-examine the witness with regard to it. The defendant says that these matters went to the interest and credibility of the witness.

■■ The time of the alleged conviction was not shown, but that is not important because the witness was of juvenile age and the statutes during the time in question provided that the disposition of a case against a delinquent child may not be shown "for any purpose whatever." Section 211.010, subd. 4 RSMo 1949, V.A. M.S., and § 211.271, subd. 3, 1957 Cum. Supp., V.A.M.S. Under our statutes the disposition of a case in juvenile court is not deemed a conviction of a crime by the child charged and is not admissible to affect his credibility as a witness. State

v. Coffman, 360 Mo. 782, 230 S.W.2d 761, 764; State ex rel. Shartel v. Trimble, 333 Mo. 888, 63 S.W.2d 37–38–39. The court did not err in refusing to allow the reference or the cross-examination.

■ Next the defendant contends the court erred in not permitting defense counsel in his opening statement to refer to the fact that there had been previous thefts from the defendant and his family in and about their home as this evidence would have explained his state of mind and his conduct on the evening in question and in overruling his offer of proof in this regard. The offer did not undertake to connect Harry Madison or his companions with the prior thefts. Such proof would have been an excursion into the proof of other offenses and its relevancy to any issue in this case is not apparent. The claim of error must be denied.

■ The defendant assigns error in the overruling of his motion for judgment of acquittal at the close of the state's case and also at the close of all the evidence in the case. As previously stated, after the original verbal altercation, the defendant collected reinforcements because, as he stated it, he and his friend Krone were not able to handle the boys alone. The defendant with his companions then went in search of the boys and when they were found, shots were fired from the defendant's automobile which the jury could find inflicted injuries upon Harry Madison. It is not necessary in these circumstances that the evidence be sufficient for the jury to find that the defendant fired the shot which struck the victim. The evidence is sufficient to show the commission of the crime of which the defendant was convicted and the defendant's criminal agency. "If two or more persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal, if the other (or others) commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common pur-

pose, or as a natural or probable consequence thereof." State v. Chernick, Mo., 278 S.W.2d 741, 746. See also State v. Butler, Mo., 310 S.W.2d 952, 957, and State v. Massey, 358 Mo. 1108, 219 S.W.2d 326, 331. The issue was for the jury and the trial court did not err in failing to direct an acquittal.

■ The prosecuting witness Harry Madison was brought into the court room on a cot or bed and testified in that position. There was evidence that the bullet which struck him on the night in question severed the spinal column in the lumbar region and that his body was paralyzed from that point down. The defendant contends that the trial court erred in failing to declare a mistrial which he sought on the ground "that the State had deliberately staged the method and manner in which the prosecuting witness was wheeled into the court room"; he asserts this was done to bias, prejudice and inflame the minds of the jurors against the defendant.

All of the evidence was to the effect that the bullet had severed the spinal cord and that Madison was partially paralyzed. The defendant sought to show that certain symbols or letters in the hospital record indicated that Madison had been out of bed on several occasions. The evidence in this regard was not conclusive and doctors testified that if the witness was out of bed at any time, he could only have been in a wheel chair. Whether the witness was brought into the court room on a bed or in a wheel chair, the effect on the jury would probably have been about the same. The charge of error is not supported by the record and the court did not err in refusing to declare a mistrial.

The defendant next charges that the court erred in not instructing the jury on the defense of accident and in not explaining the defense of accident, particularly in the light of the fact that the court had referred to accidental shooting in Instruction No. 2. The reference to accident in Instruction 2 was in defining the words, wilfully and on purpose. It was stated that these words meant intentionally and not by accident. There is no complaint that Instruction No. 2 was rendered erroneous by this inclusion and it is quite evident that the manner in which the term was there used has no connection with the defense of accident. Our examination of the record demonstrates that the defense of accident was not an issue in the case and that there was no evidence to support such an issue and defense. Therefore, the court did not err in failing to instruct the jury on the defense of accident. State v. Tellis, Mo., 310 S.W.2d 862, 866; State v. Swiney, Mo., 296 S.W.2d 112, 116. See also State v. Richardson, Mo., 321 S.W.2d 423, 429.

The defendant's next contention is that the court erred in not instructing the jury on self-defense. The defendant's testimony at the trial was that he started to call the police after the first altercation but that he did not do so when he had the opportunity. He stated that after he picked up his companions he went looking for the boys; that something hit his car as he was passing but he didn't know what it was until later; that he then heard the shotgun blast and he was so scared he drove back to the tavern where he had picked up his companions and that he heard no other shots. The state proved that in his statement to the police the defendant also said he heard other shots from the back seat of his car but did not know who fired them. The Negro boys or some of them had armed themselves with bricks and threw at the car as it was passing. Obviously, the continued movement of the car would have quickly removed the passengers from the range of thrown bricks and avoided further danger.

■ The court was not required to give an instruction on self-defense unless there was evidence to justify it. State v. Jenkins, Mo., 178 S.W. 91, 93. The use of a deadly weapon is justified only where it is necessary in defense of one's life or to prevent great bodily harm. State v. Far-

rell, 320 Mo. 319, 6 S.W.2d 857, 859. Several reasons could be urged why an instruction on self-defense would not be proper in the circumstances of this case, but we need only mention that the record discloses no evidence showing a well-founded apprehension of great bodily harm. The trial court, therefore, did not err in failing to instruct on self-defense. State v. Singleton, Mo., 77 S.W.2d 80, 85; State v. Caldwell, Mo., 231 S.W. 613, 614.

■ Instruction No. 3 covered assault with intent to kill without malice. Instruction No. 2 fully covered an assault with malice aforethought and defined terms. The defendant complains of Instruction No. 3 on the ground that it assumes that an assault had taken place in which the defendant had participated. While this precise ground was not preserved for review because no objection was made at the trial, State v. Kelton, Mo., 299 S.W.2d 493, 498, it is obvious that the instruction is not subject to the criticism made because it refers to the preceding Instruction No. 2. When the two instructions are read together, it is abundantly clear that No. 3 does not make the assumption charged against it.

■ The defendant also contends there was no evidence to support the instruction on the lower grade of the offense as defined by § 559.190. We believe the evidence was sufficient to support the instruction but if it were not, the error would be favorable to the defendant and he would not be entitled to complain of it. S.Ct.Rule 26.06, 42 V.A.M.S.; State v. Nenninger, 354 Mo. 53, 188 S.W.2d 56, 59. The defendant also asserts that Instruction No. 3 does not permit the jury to entertain the defense of accident or self-defense. We have previously decided that the defendant was not entitled to instructions on these issues.

■ The court refused to give defendant's Instruction No. C which related to defense of property. The instruction stated in substance that if the defendant or his companions were given reasonable grounds to believe that Harry Madison and his companions had committed or were about to commit an unlawful interference with defendant's property and that the defendant and his companions used what force they deemed necessary to prevent such unlawful interference, then the jury should find the defendant not guilty. The defendant contends the refusal to give this instruction was error and that the court in any event should have given an instruction on the defense of property, independent of the instruction offered by the defendant. We do not think the evidence justifies the giving of such an instruction. The only property of the defendant which might be subject to damage at the time in question was his Hudson automobile. This he had driven in search of the boys and it was in motion on the street at the time it was struck by what later proved to be a brick or bricks. The shots were fired immediately upon the car being struck and there was no showing of the possibility of further attack or that further attack could not be avoided by accelerating the automobile and getting it out of the danger zone. The evidence tends to show that the shots were fired in retaliation for the attack and the earlier altercation. In these circumstances the shooting of Harry Madison and his companion cannot be justified on the ground that the defendant and his companions were defending the defendant's property. State v. Fultz, Mo., 142 S.W.2d 39, 43; State v. Taylor, 143 Mo. 150, 44 S.W. 785; 26 Am. Jur. 272, Homicide § 172.

■ The defendant's next assignment of error is that Instruction No. 2 is erroneous because it refers to a 16 gauge, single-barrel shotgun, whereas, the evidence did not specify the gauge or otherwise describe the shotgun. The defendant's own evidence proved that a shotgun was taken into his automobile and fired from it. The indictment described the shotgun in the same manner that it was referred to in the instruction. The gauge of the shotgun and its other description was not

material to any issue and the defendant could not have been prejudiced by the manner in which it was described in the instruction. The claim of error is denied. State v. Moore, Mo., 80 S.W.2d 128, 130–131; State v. Smith, Mo., 252 S.W. 662, 666.

■ The defendant asserts that the court erred in admitting in evidence "that part of the hospital record concerning Mr. Derring." There was no "Mr. Derring" mentioned in evidence, but state's Exhibit No. 3 was identified as a hospital record pertaining to Joseph Deering, one of Harry Madison's companions. However, the exhibit was withdrawn by the state and not admitted in evidence. The record presents nothing to review on this specification.

■ The defendant's next assignment is that the court erred in admitting in evidence X-ray pictures of the skull of Mr. Derring and "an alleged pellet" in the skull because there was no identification and the evidence was wholly irrelevant and immaterial to any issue in the case. Again the defendant seems to be in error as to the identity of the person involved. There were no X-ray photographs of the skull of Joseph Deering. State's Exhibit 6 was a series of X-ray pictures of the skull of Sammie Lee. This exhibit was properly identified by a medical record librarian from Homer G. Phillips Hospital. These X-rays were further identified and used by one of the physicians who removed the pellet from Sammie Lee's head. The identification was entirely sufficient under § 490.680. Also see Fisher v. Gunn, Mo., 270 S.W.2d 869, and Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663.

As previously stated the evidence shows that the shotgun was fired at the same time the pistol shots were heard. The firing of the shotgun, the wounding of Sammie Lee, and the lodging of a shotgun pellet in his skull, were all parts of the same transaction. The firing of the shotgun and the wounding of Sammie Lee were parts of the res gestae and the exhibit was properly admitted. State v. Bell, 359 Mo. 785, 223 S.W.2d 469, 471[1].

■ Lieutenant Frank B. Ruff, a member of the St. Louis Police Department and a ballistics expert, was permitted to testify that he saw in state's Exhibit No. 6, an X-ray photograph, a circular dense object which was about the size of a "four shot." The defendant charges that the court erred in admitting this evidence because the lieutenant was not shown to be qualified to read X-rays, that no foundation was laid, and the testimony was irrevelant and immaterial. The X-ray pictures had previously been adequately identified as part of the hospital records. Dr. Henry Weathers had also testified that he operated upon Sammie Lee and removed from his head a small pellet "about one-sixteenth of an inch in diameter, and size of a buck shot or something of that caliber." The doctor further testified that state's Exhibit No. 6 was a series of X-ray photographs of the skull of the patient before the pellet was removed from his forehead. The testimony of Lieutenant Ruff was not such as to invade the field of a trained radiologist. However, the relevancy and materiality of his testimony is not readily apparent. It added nothing to the testimony previously given by Dr. Weathers and others; nor did it reveal anything not readily visible to the court and jurors. On the other hand, it is not demonstrated on the record that any prejudice resulted to the defendant from the admission of the testimony. The admission of the testimony was harmless and not reversible error.

■ The defendant's final contention is that the court erred in giving Instruction No. 5, relating to circumstantial evidence, because all the evidence in the case was direct in nature. The defendant is mistaken in his assertion that there was no circumstantial evidence in the case. For example, Harry Madison was wounded by a bullet from a .32 caliber pistol, but no one testified to seeing such a gun fired from the defendant's automobile. The reports of

the weapons, the position of the parties, and the immediate wounding of Madison, were circumstances from which the jury could find that the bullet was fired by one of the occupants of defendant's car. There are other portions of the evidence which might well be classified as circumstantial evidence. Where a case depends partially upon circumstantial evidence it is proper, although not mandatory, to instruct thereon. State v. Arnett, 338 Mo. 907, 92 S.W.2d 897, 901; State v. Smith, 354 Mo. 1088, 193 S.W.2d 499, 503; State v. Morris, Mo., 307 S.W.2d 667, 675.

We have examined all of the allegations of error and find no merit in them. Accordingly the judgment is affirmed.

All concur.