THE MUTUAL INSURANCE COMPANY OF BUFFALO *vs.* THE BOARD OF SUPERVISORS OF ERIE COUNTY.

The Buffalo Mutual Insurance Company, a corporation, possessed a fund of $100,000 arising from premiums earned upon fire and marine policies of insurance, which was invested pursuant to an authority contained in the charter, in bonds, mortgages, and stocks, so as to yield an income to be divided among the members; but the company had no other capital or effects. This fund could not, according to the charter, be withdrawn and divided among the members. *Held,* that the corporation was liable to taxation on account of such fund as capital.

Such a corporation is a "moneyed or stock corporation, deriving an income or profit from its capital or otherwise," within the meaning of the statute concerning the assessment of taxes on incorporated companies.

Money paid in as premiums to an insurance company, not liable to be withdrawn and divided, but forming the basis of its business operations, is capital, and as such is liable to taxation.

But surplus earnings or profits, over and above the amount retained as permanent capital, *it seems,* are not liable to be taxed.

[443] THE Mutual Insurance Company of Buffalo sued the

Board of Supervisors of Erie county to recover back money paid upon a collector's warrant. On the trial before SILL, J. at the Erie county circuit, it was proved that the plaintiff was a corporation, created, organized, and doing business under and in pursuance of an act of the legislature of this state, passed April 18th, 1843, entitled "An act to incorporate the Mutual Insurance Company of Buffalo ;" that in the year 1849, the plaintiff was assessed in the ordinary manner, the sum of $455,56 for the tax of Erie county ; that the *defendants* issued the usual warrant to the proper collector, and directed him to collect that sum, besides his fees, of the plaintiff, and pay the same, deducting his fees, into the treasury of Erie county ; that under and in pursuance of that warrant, the collector (the plaintiff having refused to pay the tax when called upon) levied upon and took possession of the personal property of the plaintiff and advertised it for sale ; that on the day of sale the collector threatened to sell, and was proceeding to sell such property, when the plaintiff, to prevent the sale, and to regain the possession of the property, paid to the collector the aforesaid sum, and $22,79 as his fees, which money, deducting the fees, was afterwards paid by the collector into the treasury of Erie county ; that the plaintiff paid the money under protest, claiming that the company was not taxable by the laws of this state, and subsequently demanded the money of the defendants, who refused to refund it.

At the time of the assessment of the tax the assets of the plaintiff consisted of premiums, secured and earned upon fire and marine insurance policies, to the amount of $101,350, which earnings were invested in bonds and mortgages and stocks, except a portion which was in cash. The company had no property except such earnings. The plaintiff, to represent the interest which each insurer had in the earnings of the year in which. he was insured, issued certificates in the following form : " This is to certify that A. B. is entitled to        dollars in the capital stock of the Mutual Insurance Company of Buffalo, subject to the rights of the company, under the charter, and is entitled to receive on the said sum, annually, such [444] interest as the accruing interest will enable the company to pay.

The interest to cease on public notice of payment, whether the amount is called for or not. The amount hereby represented is transferable only on the books of the company by the said A. B. or his attorney, on a surrender of this certificate." Signed by the president and secretary. In the margin the certificate is denominated " Certificate of Profits declared in the year 185 ."

The *only* question litigated on the trial was whether the plaintiff, as a corporation, was taxable by the laws of this state. The justice decided that the plaintiff was liable to taxation, and could not therefore recover.

The supreme court at general term, in the eighth district, affirmed the judgment entered on the decision, and the plaintiff appealed to this court.

*John Ganson*, for appellant.

*S. G. Haven,* for respondents.

PAIGE, J. The only question to be determined in this case is, whether the Mutual Insurance Company of Buffalo is, as a corporation, liable to taxation under the laws of this state. Is it a moneyed or stock corporation, deriving an income or profit from its capital or otherwise ; and has it a capital on which a tax can, under the 4th title of the chapter in relation to taxes, be imposed? (1 *R. S.* 414, *tit.* 4, § 1.) The term " moneyed corporation," as used in the 2d title of chapter 18, in relation to incorporations, is declared to mean every corporation having banking powers, or having the power to make loans upon pledges or deposits, or authorized by law to make insurances. (1 *R. S.* 598, § 51.) But it is said that this is not a general definition, and was not intended to apply to the corporations embraced by the fourth title of the chapter relative to the assessment of taxes. The 15th section of the act incorporating the Mutual Insurance Company of Buffalo, which declares that sections 19 to 25 inclusive of the title in relation to moneyed corporations, shall not be applicable to such insurance company, seems to imply that the other sections of that title are

applicable to such company by reason of its being a moneyed corporation. I can not see the propriety of limiting the term " moneyed corporation" to corporations having banking powers. The capital of insurance companies consists of money paid in by the stockholders or members of the company. This capital is invested on bonds and mortgages or in stocks, and the income arising from the investment is divided among the stockholders or expended in the payment of expenses and losses. The premiums paid on insurance are paid in money, and are also expended in the payment of losses and expenses, or divided among the stockholders as profits. The capital stock of a bank is paid in in money and is invested in the discount of notes and bills of exchange, and the income arising from such investment is applied to the payment of expenses and distributed among the stockholders as profits. Both banks and insurance companies deal in money and in the business of lending money; and there can be no impropriety, therefore, in embracing within the definition ot " moneyed corporation," insurance companies as well as banks, although the former do, in addition to the business of lending money, conduct the business of insurance.

Is the Mutual Insurance Company of Buffalo a stock corporation? The stock or capital stock of a corporation is the fund or capital consisting of money or goods employed in conducting the business of the company. The stock of an insurance company is the money paid in by the stockholders or members of the company, and which forms the basis of the operations of the company in making insurances, and is retained in its character of money to meet demands for losses, or is invested in securities to be resorted to, if necessary, to pay losses. If the money so paid in as the capital to be employed in conducting the business of the company, can not be withdrawn and divided among the stockholders or members of the company, it constitutes the capital stock or capital of the company. It is immaterial whether this money paid in as capital was paid in before or after the organization of the company. If paid in as capital to form the basis of the operations of the company, and not [446]

to be withdrawn, it is equally capital, whether paid in before or after the organization.

By the provisions of the act to incorporate the Mutual Insurance Company of Buffalo, every person who has taken a policy during the next preceding year, in his own name or in the name of his firm, and every person holding in his own name or in the name of his firm a certificate of the company not discharged by payment of losses, for a proportionate share of the premiums earned to the amount of $25, are members of the company; and the act provides that every person who shall become a member by effecting an insurance shall, the first time he effects an insurance, pay the premiums fixed by the trustees; and that no premiums so paid shall be withdrawn from the company during its continuance. The company is authorized to invest all premiums received in bonds and mortgages, or in stocks of the city of Buffalo, and on bottomry and respondentia bonds. Until the net profits of the company exceed $100,000, no part thereof can be applied towards the redemption of the certificates issued to the members of the company, and then only the excess above that sum can be applied for that purpose. And the trustees in their election, may refuse to apply any of the net profits except the excess above the sum of $200,000 towards the redemption of such certificates. Here, then, in this mutual insurance company, we have stockholders called members of the company. These stockholders have contributed to the capital or capital stock by paying to the company the premiums on their respective insurances. These premiums, at least that portion of them paid by the stockholders the first time they effected their insurances, can not be withdrawn. They, therefore, constitute a permanent capital liable to reduction only by the payment of losses; in other words they constitute the capital stock of the company. There can in no event be a payment to the stockholders or withdrawal of the net profits, until they exceed $100,000, and then only can the excess above that sum be withdrawn by the trustees to be applied by them in the redemption of certificates. This $100,000 must be retained as [447] the capital of the company, and even $200,000 may, in

the discretion of the trustees, be retained for that purpose. If, then, this company has not only stockholders but a capital or capital stock; if it derives an income or profit not only from the interest on the investments of its capital, but also from the premiums on its insurances, it must be a stock corporation deriving an income or profit from its capital or otherwise, and therefore must be liable to taxation on its capital under the title of the revised statutes in relation to the assessment of taxes. I am, therefore, of opinion that there is no error in the judgment of the supreme court, and that the same should in all respects be affirmed.

That portion of the net profits of the company which exceeds the sum retained as permanent capital or capital stock, can only, within the meaning of the title relating to the assessment of taxes, be regarded as surplus profits; and for these profits the company is not liable to taxation. It is liable to taxation only on its capital; not on its surplus profits. (*Bank of Utica* v. *City of Utica,* 4 *Paige,* 399 ; 4 *Hill,* 20.)

GARDINER, J. The only question in this cause is, whether the appellant as a corporation, is subject to taxation, according to the laws of this state.

By the 1st section of title 4, " concerning the assessment of taxes, on incorporated companies," (1 *R. S.* 415,) " all moneyed, or stock corporations deriving an income or profit from their capital, or otherwise, are liable to taxation on their capital." By the 51st section of the 3rd article, (1 *R. S.* 599,) every corporation " authorized by law to make insurance," is declared to be a " moneyed corporation." The appellant was a corporation authorized by law to make insurance, (*Sess. L.* 1843, *p.* 199, § 1,) and was therefore a moneyed corporation. The presumption is, that an income or profit was derived from its business. This was one object for which it was created. The charter directs the profits to be estimated, (§ 11,) how they may be invested, (§ 8,) and when their accumulation shall exceed $100,000, how the excess shall be applied, (§ 13.) (*Sess. L. supra.*)

[448] It was then, according to the provisions of the first section of the statute above quoted, "liable to taxation on its capital." By capital, 1 understand the legislature to mean, the fund upon which the incorporation transacts its business, which would be liable to its creditors, and in case of insolvency, pass to a receiver. In this sense, the capital of this corporation consisted of the premiums for insurance paid, or contracted to be paid, in contemplation of future risks, to be taken by the insurer. The first is analogous to "capital stock paid in ;" the second, to "capital stock secured to be paid in," as mentioned in the 3rd subdivision of the 6th section of the statute.

The theory upon which these mutual insurance companies were formed, seems to have been, that earnings of the corporation, present and prospective, should constitute its capital; accordingly, the 4th section of this charter requires applications for insurance, amounting to $100,000, before the company can be organized. The 7th section provides for the payment of premiums, or the receipt of notes for risks taken by the company, at rates fixed by the trustees ; and the 9th section, that notes may be received for premiums *in advance*, of persons intending to receive policies. These notes, whether given for premiums, or in advance, become the property of the corporation, to be negotiated, or disposed of in the ordinary course of its business ; and they, together with the sums received for premiums, from time to time, constitute its capital, (§ 9.) (*Deraismes* v. *M. M. Ins. Co.* 1 *Comst.* 371. *See cases in* 3 *id.* 290.) This is unlimited. But by the 12th section of the charter, provision is made for the payment of dividends, and for ascertaining the interest of the corporators in premiums actually earned by the company and constituting a part of its capital stock, and it directs that certificates shall be issued as the evidence of that interest. The 13th section provides for the redemption of those certificates, when the net profits of the business shall exceed $100,000.

The appellant was, therefore, a moneyed corporation, authorized to derive a profit from its business, with a capital created in the manner above suggested, and consequently, by the first [449] section of the revised statutes above referred to, liable to

taxation. The assessment of every such corporation indeed, is made conclusive evidence of its liability to taxation, and that it was duly assessed, unless the affidavit prescribed by the 9th section of the act is made, and presented in the manner there directed. (1 *R. S.* 416, § 9.)

The judgment of the supreme court should be affirmed.

Judgment affirmed.