## In re HERKIMER MILLS CO., Inc.

District Court, N. D. New York.
April 3, 1930.

626

Bronner & Ward, of Little Falls, N. Y., for trustee.

John H. O'Brien, of Watertown, N. Y., for claimant Nathan Stabbins.

COOPER, District Judge.

This is a petition by Nathan Stabbins for the review of the decision of F. J. De La Fleur, referee in bankruptcy, declaring invalid as against creditors two certain instruments called assignments herein.

The bankrupt filed its voluntary petition June 9, 1923, and was adjudicated June 11, 1923.

While other assignments given by the bankrupt to the same claimant were held valid by the referee, they were given more than four months before bankruptcy. The two held invalid were given within the four-month period, viz, April 16, 1923, and April 27, 1923.

The assignment of April 16th provides that the Herkimer Mills "hereby sell and assign all of our interest and right," and then follows a description of the goods covered thereby. The assignment of April 27th reads that the Herkimer Mills "hereby assign our equity," in certain other described goods, to Nathan Stabbins, "with the right of payment direct to him."

The referee found that the consideration for the assignment of April 16, 1923, was loans aggregating $3,243.07, advanced to the bankrupt prior to April 16, 1923. The loans were in fact advanced between September, 1922, and January 2, 1923. The referee also found that the consideration for the assignment of April 27, 1923, was a loan of $1,000 made on April 19, 1923.

The goods referred to in the assignment of April 16, 1923, were a quantity of cotton sweater coats included in cases 536 to 590, which cases were then in the possession of Tatum, Pinkham and Gray of New York City, who held warehouse receipt therefor, and who had made advances thereon to the bankrupt to cover the cost of manufacture. The goods referred to in the assignment of April 27, 1923, were certain sweater coats included in cases 591 to 599, inclusive, which cases were also in possession of Tatum, Pinkham, and Gray, who held warehouse receipts therefor, and who had made advances thereon to the bankrupt to cover the cost of manufacture.

The referee held with reference to each of these assignments in the following language:

"That the attempted assignment of the interest of the Herkimer Mills Company (Bankrupt) was not a valid and legal assignment and transfer to Nathan Stabbins as against the creditors of the Herkimer Mills Company and the said Nathan Stabbins is not entitled to receive the proceeds of the sale of the goods described in the alleged assignment."

"That this assignment was made, executed and delivered within four months of the adjudication of the Herkimer Mills Company in Bankruptcy and is, therefore, void and invalid, because it tends to create a preference in favor of Nathan Stabbins as against the general creditors of the Herkimer Mills Company."

The referee did not expressly find that these instruments were given as security for the loans stated by him to have been the consideration therefor, nor did he characterize them as absolute transfers, chattel mortgages, pledges, or otherwise. "The referee did find," as a matter of fact, that at no time prior to the date of filing of the petition in bankruptcy were any of the goods mentioned in these assignments either actually, or constructively, delivered to, or in the possession of, the claimant. Nor did the referee find that these loans were made upon a promise to give security therefor or to give those particular assignments.

It would be difficult to find stronger or less ambiguous words for the passing of title than those words "sell and assign all our right and interest."

The claimant concedes that, if these assignments were chattel mortgages, they were void because not filed before bankruptcy.

The essence of claimant's contention is that these assignments are in legal effect pledges, that filing was not necessary; that actually delivery of possession could not be made because of the prior right of possession of Tatum, Pinkham and Gray, but that the assignments were constructive delivery of possession of the goods; that the assignments were given pursuant to an agreement to give them, made prior to the four-month period, were effective as·of the date of the agreement, and that claimant's rights are superior to those of the trustee in bankruptcy.

██ A chattel mortgage is in essence a transfer of title as security subject to the reversion of the title upon payment of the debt or performance of the obligation. A transfer of possession is not usual or necessary, but, when there is not an immediate and continuous change of possession, the chattel mortgage must be filed to meet the requirements of the state statute.

██ A pledge is a bailment of personal property given as security for.some debt or engagement. Delivery of possession is essential to a pledge, and, unless the pledgee takes and retains the pledged goods, there is no pledge.

In Re People v. Remington, 59 Hun 287, 12 N. Y. S. 824, 826, 14 N. Y. S. 98, affirmed without opinion in 126 N. Y. 654, 27 N. E. 853, the court distinguished pledges from chattel mortgages as follows:

"'A "pledge" differs from a "chattel mortgage" in three essential characteristics: (1) It may be constituted, without any contract in writing, merely by delivery of the thing pledged. (2) It is constituted by a delivery of the thing pledged, and is continued only so long as the possession remains with the creditor. (3) It does not generally pass the title to the thing pledged, but gives only a lien to the proprietor while the debtor retains the general property.' Jones, Pledges, § 4. 'Whenever there is a conveyance of the legal title to personal property upon an expressed condition subsequent, whether contained in the conveyance or in a separate instrument, the transaction is a mortgage.' Id. § 8. A delivery must always accompany a pledge, while a mortgage may be valid without a delivery. Jones, Chat. Mortg. § 7. 'A decisive test of a legal mortgage of personal property is the use of language which makes the instrument one of sale conveying the title of the property to the creditor conditionally, so that the sale is defeated by the debtor's performance of his agreement.' Id. § 8."

In Re Bacon, 210 F. 129, 131 (C. C. A. 2), it is said:

"Under both the civil and the common law it is necessary to the validity of a pledge that the possession of the pledged property be delivered to the pledgee or to someone for him, and delivery is the very essence of the contract.

"While delivery may be made to a third person to hold for the pledgee, such person must know of the agreement and accept the obligation it imposes."

██ The transactions involved here fail to meet the requirements of a pledge in the following respects: (a) There was no actual delivery of the things pledged; (b) there was a writing which purported to pass the title rather than a special interest or to create a lien; (c) while claimants contend that the assignments were constructive delivery · of the possession, the possession was already in a third person, and there is no proof that such third person knew of such constructive delivery or consented to accept the obligation thereof and hold the goods for claimant.

The writing rather satisfies the definition of the chattel mortgage, for there was a conveyance of a legal title to personal property or at least of all the bankrupt's interest therein, and, while the transfer of title was not stated in the instrument to be defeasible upon performance of an express condition subsequent, claimant necessarily contends, in calling the transaction a pledge, that there was such a definite condition subsequent.

These assignments are chattel mortgages rather than pledges, and so void for the rea-

sons above stated. If there was no condition subsequent, the title conveyed by the instruments would be an indefeasible title, and the instruments would be absolute transfers, and neither chattel mortgages nor pledges. As such, they would also be void, for they were given for a pre-existing debt within four months, and the effect was to enable claimant to obtain a greater proportion of his debt than other creditors of the same class.

■ Moreover, it may well be doubted that there was any agreement to give a pledge, as distinguished from a chattel mortgage. The only testimony on the subject was given by the claimant himself, and was as follows:

"Q. What was the talk you had with Max (Pres. of Bankrupt) at the time this exhibit 5 (Assignment of April 16, 1923) was given? A. I wanted some security for money advanced and in turn I received that (Exhibit 5)."

"Q. When you talked with Max about making advancements did he, as you talked, have the assignments with him which he afterwards gave you?—when you had talked with reference to a loan you were making—did Max have an assignment that he afterwards gave you? A. No.

"Q. Will you state on these occasions what was said with reference to assignments of security? A. He said he would give me assignments to cover advancements made to the Herkimer Mills Co. It was not specified when it was to send it to me. I felt that I could trust him."

This falls far short of showing an agreement to give any particular kind of security.

■ Even if there were such an alleged agreement in this case to give a pledge, as claimant contends, it would not be enforceable between the parties, in the absence of proof that the goods were sufficiently described in the agreement for identification or were set apart for such purpose. It would seem that such an agreement should so definitely describe the things pledged as to support an action for specific performance. Lighthouse v. Third National Bank, 162 N. Y. 334, 336, 56 N. E. 738; Hook v. Ayers (C. C. A.) 80 F. 978, 982; In re Goodhue Motor Company (D. C.) 28 F.(2d) 402.

■ Moreover, the authorities hold that, where the agreement to give pledge or other security is made prior to the four-month period, but not executed until within that period, it is void as a preference under the Bankruptcy Law.

In Re Sheridan, 98 F. 406 (D. D. Pa.), the headnote says:

"An agreement to pledge personal property as security for a debt is not executed where the goods are not delivered to the creditor, nor set apart and treated as his property; and, where the creditor takes possession of the property a few days before the filing of a petition in bankruptcy against the debtor, the transaction is voidable as a preference, notwithstanding that the original agreement was made more than four months before that time."

See, also, Mathews, Trustee in Bankruptcy, v. Hardt, 79 App. Div. 570, 80 N. Y. S. 462, where the court declined to characterize the agreement to give security as an agreement to give a chattel mortgage, but inferred, without so holding, that it was in the nature of an agreement to pledge, and, though made before, since it was executed within the four-month period, it was held void as a preference, because it gave the creditor a greater portion of his debt than other creditors. American Can Co. v. Erie Pres. Co. (C. C.) 171 F. 540.

Other authorities are to the same effect, though relating chiefly to chattel mortgages given within the four-month period in execution of an agreement made prior to such period. Corney v. Saltzman et al., 22 F.(2d) 268 (C. C. A. 2), where the headnote says: "Mortgage by insolvent debtor within four months of petition in bankruptcy is voidable preference, although executed pursuant to contract made more than four months before (Bankr. Act, § 60a [11 USCA § 96[a])." Hayes v. Gibson, 279 F. 812, 22 A. L. R. 1372 (C. C. A. 3), certiorari denied, 259 U. S. 581, 42 S. Ct. 464, 66 L. Ed. 1074. Pollock v. Jones, 124 F. 163 (C. C. A. 4); Tilt v. Citizens Trust Company et al. (D. C.) 191 F. 441; In re Thomas (D. C.) 199 F. 214.

Claimant's cases are not analogous.

■ The status of the trustee is, since the amendment of 1910 to the Bankruptcy Law, not as stated in Thompson v. Fairbanks, 196 U. S. 516, 25 S. Ct. 306, 49 L. Ed. 577 and other decisions in bankruptcy cases arising before 1910, upon which claimant relies. The trustee since that amendment stands in a stronger position than a simple contract creditor, viz.:

"Such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of

a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied." Section 47 of Bankr. Law, 11 USCA § 75.

The other cases on which claimant relies to establish his contention that the execution within the four-month period of an agreement to give security made prior to such agreement is effective against the trustee as of the date of agreement, rather than the date of execution thereof, are not in point.

Goodnough M. & S. Co. v. Galloway (D. C.) 171 F. 940, 22 Am. Bankr. R. 816, was decided before the 1910 amendment to the bankruptcy act.

In re Automobile Livery Service Company, 176 F. 792, 23 Am. Bankr. R. 799 (D. C. N. D. Ala), was also apparently decided before the amendment of 1910, and the questions at issue in this case, as well as in the case of J. A. Harvey, 212 F. 340, 32 Am. Bankr. R. 337 (D. C. S. D. Ala), were held to be governed by the laws of the state of Alabama. There is therefore no ground upon which the claimant can succeed.

The decision of the referee is affirmed.