John SCHWARTZ, et al., Appellant,

v.

BANN–COR MORTGAGE,
et al., Respondent.

No. WD 65187.

Missouri Court of Appeals,
Western District.

May 9, 2006.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 27, 2006.

Application for Transfer Denied
Aug. 22, 2006.

Kip Dudley Richards, Kansas City, MO, arguing on behalf of appellant.

Thomas James Fritzlen, Jr., Kansas City, MO, for Respondent Bann–Cor Mortgage.

Mark Alan Olthoff, Kansas City, MO, for Respondent Master Financial and Master Financial Asset Securitization Trust.

Daniel Larson McClain, Kansas City, MO, for Respondents HomeQ Servicing and The Money Store.

Before ROBERT G. ULRICH, P.J., PATRICIA A. BRECKENRIDGE, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

The issues in this appeal include the question of whether the six-year limitations period of Section 516.420, RSMo, 2000 applies to claims brought under the Second Mortgage Loan Act against Bann–Cor, a company engaged in the business of making second mortgage loans.

Plaintiffs John and Jeannette Schwartz applied for and obtained a second mortgage loan in 1997. The Schwartzes obtained a loan in the amount of $25,000.00 payable over 20 years at 15.50 percent interest, from Bann–Cor, a California corporation. Additional charges in connection with the loan were a $500.00 loan origination fee, a $595.00 "processing" fee, and a $500.00 "underwriting" fee. The additional charges were financed by rolling them into the loan balance.

Plaintiff James Wong also, in 1997, obtained a second mortgage loan in the amount of $50,000.00, payable over 20 years at 13.99 percent interest. Wong was charged a $5,000.00 loan origination fee and a $495.00 "processing" fee. The additional charges were financed by rolling them into the loan balance.

Bann–Cor sold Wong's loan to Master Financial, Inc. Bann–Cor sold the Schwartz's loan to Defendants Homeq Servicing Corporation and The Money Store.

At the time of these transactions, the making of second mortgage loans in the State of Missouri was regulated by section 408.231, *et seq.*, RSMo 1994, the Second Mortgage Loan Act ("SMLA"). The SMLA purported to regulate the charging by lenders of closing costs and fees. Three years thereafter, on October 31, 2000, plaintiffs brought an action against Bann–Cor and a defendant believed to be an assignee of the loans in question. Plaintiffs brought the action in behalf of themselves and also sought to be designated representatives in order to bring claims in behalf of the class of other Missouri home owners who borrowed money from Bann–Cor under similar terms and conditions.

In their third amended petition, plaintiffs alleged that each of the loans at issue was a second mortgage loan within the meaning of the SMLA. They alleged that the rates charged exceeded Missouri's "maximum lawful rate" at the time. They also alleged that Bann–Cor violated the SMLA by charging plaintiffs additional fees not authorized by the SMLA. Plaintiffs sought to recover the allegedly unlawful fees and closing costs that they were charged, as well as interest paid on their loans. They also sought actual and punitive damages, interest, attorney's fees and injunctive relief. Plaintiffs alleged that the assignee defendants (Master Financial, Inc., Homeq Servicing Corporation and The Money Store) are liable to plaintiffs under federal laws specifying that assignees may be liable for violations of state consumer protection laws just as the originators of such loans may be liable. Plaintiffs sought to be allowed to proceed not only in behalf of a class of plaintiffs, but also against a class of defendants comprised of entities that had purchased loans from Bann–Cor.

One of the affirmative defenses raised herein by defendants is the defense that the claims are barred by the statute of limitations set forth in section 516.130(2),

RSMo 2000,[1] which provides for a three-year period of limitations for actions on a statute for a penalty or forfeiture where the action is given to the party aggrieved. In response to defendants' motions, plaintiffs asked for and were granted leave to file a third amended petition in which plaintiffs asserted that plaintiffs had six years in which to bring an action under section 516.420, which is applicable to claims for a penalty or forfeiture brought against "moneyed corporations" within the meaning of section 516.420.

On January 28, 2005, the court granted motions to dismiss and motions for summary judgment filed by the defendants, ruling that the claims of plaintiffs were barred by the three-year statute of limitations set forth in section 516.130(2). Plaintiffs appeal.

In their points I and II, plaintiffs contend that the trial court erred in granting motions to dismiss filed by Bann–Cor and The Money Store because the motions to dismiss alleged facts sufficient to show that the matter is governed by the six-year statute of limitations set forth in section 516.420 rather than the three-year statute of limitations set forth in section 516.130(2). In point III, plaintiffs contend the court similarly erred in granting the motion for summary judgment filed by Master Financial. In point IV, plaintiffs contend that the court erred in denying plaintiffs' motion to add persons as plaintiffs in that the class of persons sought to be added were not barred by the statute of limitations.

## Standard of Review

All the motions granted in this case, whether denominated a motion to dismiss or a motion for summary judgment, were

determined by the trial court's ruling on the issue of the applicability of the three-year statute of limitations. Thus, the questions presented in this appeal are questions of law. There is no dispute as to the essential facts. We review the legal issues in the appeal *de novo. M & P Enter., Inc. v. Transamerica Fin. Serv.,* 944 S.W.2d 154, 159 (Mo. banc 1997); *Yahne v. Pettis County Sheriff Dep't,* 73 S.W.3d 717, 719 (Mo.App.2002).

## Point I

In their first point, appellants ("Borrowers") contend that the circuit court erred in ruling that the claims are barred by the three-year statute in section 516.130(2) in that the applicable statute of limitations is a six-year statute, section 516.420. Plaintiff Borrowers pleaded that Defendant Bann–Cor Mortgage, a California corporation, is a "moneyed corporation" within the meaning of section 516.420, and pleaded facts supporting that assertion. Borrowers contend the proper statute of limitations is as follows:

> None of the provisions of sections 516.380 to 516.420 shall apply to suits against moneyed corporations or against the directors or stockholders thereof, to recover any penalty or forfeiture imposed, or to enforce any liability created by the act of incorporation or any other law; but all such suits shall be brought within six years after the discovery by the aggrieved party of the facts upon which such penalty or forfeiture attached, or by which such liability was created.

§ 516.420.

The petition alleges that Bann–Cor is a mortgage lender, lending money to individ-

1. All statutory references are to the Revised Statutes of Missouri 2000, unless otherwise indicated.

uals throughout the nation. Bann–Cor allegedly makes the loan and then sells the loans to third parties. The loans in Missouri were secured by deeds of trust. Plaintiffs contend that the making of such loans and the selling of such loans are characteristics of a "moneyed corporation." Bann–Cor allegedly has no business other than dealing in money and assignable financial instruments. Borrowers point out that Bann–Cor, as a mortgage lender, is subject to certain banking laws, *e.g.*, sections 443.800 to .893, RSMo and title XII of the United States Code. Bann–Cor is, Borrowers say, licensed by the Missouri Division of Finance to lend money and to then assign the loan paper to secondary entities. *See* §§ 443.803.1(13), 443.805.1, RSMo, 2000, governing entities "engag[ed] in the business of brokering, funding, originating, servicing or purchasing of residential mortgage loans."

Section 516.420 was originally enacted in Missouri in 1865 as chapter 190, section 10 of the General Statutes of the State of Missouri. It was borrowed from the statutes of New York. *Div. of Labor Standards v. Walton Constr. Mgmt. Co., Inc.*, 984 S.W.2d 152, 155 (Mo.App.1998). The language of section 516.420 is very similar to the language of section 44, part 3, chapter 4, title 2 of the Revised Statutes of the State of New York, which the New York legislature enacted in 1830:

> None of the provisions of this chapter shall apply to suits against directors or stockholders of any moneyed corporations to recover any penalty or forfeiture imposed or to enforce any liability created by the second title of the eighteenth chapter of the first part of the Revised Statutes; but all such suits shall be brought within six years after the discovery, by the aggrieved party, of the facts upon which such penalty or forfeiture attached or by which such liability was created.

*Platt v. Wilmot,* 193 U.S. 602, 608, 24 S.Ct. 542, 48 L.Ed. 809 (1904). Upon adoption of the New York Code of Procedure in 1848, this section became section 89 of that Code. *Id.* As re-enacted by the New York legislature in 1848, section 89 read as follows:

> This title shall not affect actions against directors or stockholders of a moneyed corporation to recover a penalty or forfeiture imposed, or to enforce a liability created by the second title of the chapter of the Revised Statutes, entitled "Of moneyed corporations," but such action must be brought within six years after the discovery by the aggrieved party of the facts upon which the penalty or forfeiture attached or the liability was created.

*Brinckerhoff v. Bostwick,* 99 N.Y. 185, 1 N.E. 663, 666 (1885). In 1849, the New York Code of Procedure was amended and section 89 became section 109. *Platt,* 193 U.S. at 608, 24 S.Ct. 542. In the amendment, the phrase "moneyed corporation" became "moneyed corporation or banking association." After this amendment, section 109 read as follows:

> This title shall not affect actions against directors or stockholders of a moneyed corporation or banking association, to recover a penalty or forfeiture imposed, or to enforce a liability created by law; but such actions must be brought within six years after the discovery, by the aggrieved party, of the facts upon which the penalty or forfeiture attached, or the liability was created.

*Hobbs v. Nat'l Bank of Commerce of Kansas City,* 96 F. 396, 399 (2d Cir.1899).

When Missouri adopted the statute that has become section 516.420, it was made applicable not only to actions against *directors or stockholders* of moneyed corpo-

rations, but also to actions against the corporations themselves.

The Missouri Statutes do not define the phrase "moneyed corporation." *Walton*, 984 S.W.2d at 154. The court in *Walton* indicated that we look to New York law in effect in 1865 to help determine the meaning of the phrase "moneyed corporations." *Id*. In *Walton*, this court noted that at the time section 516.420 was adopted in Missouri, another statute of New York (1 N.Y.Rev.Stat. 598, § 51) defined the term "moneyed corporation" as "every corporation having banking powers or having the power to make loans upon pledges or deposits, or authorized by law to make insurance." *Id*. at 155.

Because New York's highest appellate court (the Court of Appeals of New York) looked to 1 N.Y.Rev.Stat. 598, section 51 for a definition in *Mutual Insurance Co. of Buffalo v. Supervisors of Erie*, 4 N.Y. 442 (1851), the *Walton* court determined that the definition provided by that New York statute would be appropriate to determine the issue before it. *Id*. at 155. Although the corporations in question in that case, construction companies, had the "*power* to make loans on deposits and pledges," (emphasis added), they were not in the regular business of lending money. *See id*. at 156. Therefore, the court said, the construction companies in that case were not "moneyed corporations." *Id*. The statute from which the court derived the definition in question was a statute having to do with taxation. *See Mutual Ins.*, 4 N.Y. at 444.

*Walton* points us to New York law and also makes clear that not every business corporation is a "moneyed corporation." Further research also shows that the term "moneyed corporation" was defined not only in 1 N.Y.Rev.Stat. 598, section 51, but also in another statute of that era as including not only banks and insurance companies, but also any "trust, loan, mortgage security, guaranty or indemnity company or association, and every corporation or association having the power and receiving money on deposit." *See* 1874 N.Y. Laws 324; *see also Hobbs v. Nat'l Bank of Commerce of Kansas City*, 101 F. 75, 76–77 (2nd Cir.1900) (holding that a mortgage company named the "Western Farm Mortgage Company" was a "moneyed corporation").

The court in *Walton* did not go into an in-depth study of the legal history of "moneyed corporations," because it did not need to do so in order to determine whether the construction companies in that case were "moneyed corporations." In this case, however, additional analysis is required if we are to understand whether Bann–Cor, which is in the regular business of lending money, is a "moneyed corporation."

Under *Walton*, we seek to discern whether the definition provided in 1 N.Y.Rev.Stat. 598, section 51, would include Bann–Cor. Legislative intent may be construed with reference to background historical considerations. *See* 2A Sutherland, Statutory Construction, section 45.10 at 46–48 (5th ed.1992).

> The primary rule of construction of statutes is to ascertain the lawmakers' intent, from the words used if possible; and to put upon the language of the legislature, honestly and faithfully, its plain and rational meaning and to promote its object, and the "manifest purpose of the statute, considered historically," is properly given consideration. *Cummins v. Kansas City Public Service Co.*, 334 Mo. 672, 66 S.W.2d 920, 925 (1933).

New York law has recognized three broad classifications of corporations: public corporations, other-than-for-profit corporations, and for-profit corporations. *See*

N.Y. Gen. Constr. Law, § 65(a) (McKinney 2006). Within the third category, that of corporations formed for profit, such corporations are further classified as either 1) a business corporation, 2) a moneyed corporation, 3) a railroad corporation, or 4) a transportation corporation. N.Y. Gen. Constr. Law, § 65(d) (McKinney 2006). We presume that the legislature had reasons for dealing separately with these four categories of corporations.

Because current New York law defines a "moneyed corporation" as "a corporation to which the banking law or the insurance law is made applicable by the provision of such laws" (*See* N.Y. Gen. Constr. Law, § 66.9 (McKinney 2006)), the Borrowers look to *current* New York banking laws and regulations to see if Bann–Cor is a corporation to which banking law is applicable. The regulations under current New York banking law, Borrowers say, apply to entities originating, funding, and servicing residential mortgage loans. Because the defendants here are engaged in the business of making loans and dealing in financial obligations secured by mortgages, Borrowers argue that defendants are "moneyed" corporations within the meaning of section 516.420.

Respondents disagree. Bann–Cor, pointing to the *Walton* case, reminds us that we should look beyond current New York law to the law as it existed in 1865. Bann–Cor argues that Bann–Cor does not accept or make loans upon "deposits or pledges," does not make insurance, and does not have banking powers. Bann–Cor contends that although it makes loans on real estate, it does not make loans on "pledges" or "deposits." Bann–Cor says that mortgage companies are excluded from the definition because the term "pledges" refers only to security interests in personal or intangible property, citing *Sansone v. Sansone*, 586 S.W.2d 87, 89–90

(Mo.App.1979)(noting distinction at common law between real estate mortgage and a pledge of personal property). Bann–Cor also denies that it has "banking powers," though it is regulated by the Division of Finance in its lending activities. Bann–Cor is not a bank, does not accept deposits, does not offer banking services, and is not subject to the general laws governing banks. The mere making of loans, Bann–Cor points out, does not make an entity "subject to the banking law to the same degree that organizations formed thereunder are," citing *Retailers Collateral Security Trading Corp. v. State of New York,* 6 A.D.2d 975, 176 N.Y.S.2d 429, 430–31 (1958) ("sales finance company" that made loans did not thereby qualify as a "moneyed corporation"). Bann–Cor also points out that mortgage loan companies in Missouri are licensed under and governed by Chapter 443, whereas banks are governed by Chapter 362.

The Borrowers, in rebuttal, argue that Bann–Cor *does* make loans on "pledges or deposits" because it makes mortgage loans and that the term "pledge" should be understood in its ordinary, broad sense rather than in the narrow technical sense of a chattel mortgage. Thus, the parties focus on how the word "pledge" should be understood. We interpret statutory words and phrases in their ordinary sense, unless it is a specialized term used in the specialized manner, in which case we interpret it in its technical sense. Section 1.090 RSMo 2000.

The phrase "make loans upon pledges or deposits" seems a somewhat unusual phrase for a description of corporation powers. Generally, the word "deposit" means "to lodge for safekeeping or as a pledge, to entrust to the care of another." *White v. Greenlee,* 330 Mo. 135, 49 S.W.2d 132, 134 (1932). The exact parameters of the term "pledges" is not clear. There is a

broad meaning used as a term in ordinary speech. At the same time, there is a more narrow, technical meaning. Both the AMERICAN HERITAGE COLLEGE DICTIONARY (3rd ed.1993) and the OXFORD DICTIONARY & THESAURUS (American ed.1996) offer as the first meaning of the word "pledge," the concept of "a solemn promise or undertaking." The second definition is *"something given or held as security to guarantee payment of a debt or fulfillment of an obligation"* (emphasis added). THE NEW OXFORD AMERICAN DICTIONARY (2d ed.2005) prescribes for the same first meaning ("a solemn promise or undertaking"), and then gives a legal concept as the second meaning ("a *thing* given as security for the fulfillment of a contract or the payment of a debt and is liable to forfeiture ...") (emphasis added). None of these regular dictionaries limits the ordinary use of the word to a security interest or possessory interest in *personal* property to secure a debt.

It is true that the term "pledge," when used in the specialized sense, has generally applied to personalty held as security for debt, but not to realty mortgages. *See, e.g., Sansone*, 586 S.W.2d at 89–90; *In re Herkimer Mills Co.*, 39 F.2d 625, 627 (N.D.N.Y.1930); *Haskins v. Kelly*, 24 N.Y. Sup.Ct. 160, 1 Abb. Pr. (n.s.) 63, 75 (Gen. Term 1863). Respondents argue, of course, that the phrase "make loans upon pledges or deposits," was used in a technical legal sense and not in an ordinary sense.

We believe the question of whether the word "pledges" is used only technically must be considered in the light of the general historical concept of "moneyed corporation." *See Cummins*, 66 S.W.2d at 925. Otherwise, it is difficult to discern whether the New York legislative body would have had any particular reasons to distinguish between lenders who loan mon-ey on personal property and other lenders. Was the legislation intended to apply to the local pawn shops but not to large real estate mortgage companies? We believe that it is necessary to get to the root of the concept of "moneyed corporations" (and why such a concept existed at early American law) to understand what the Missouri General Assembly had in mind in adopting a special limitations period for claims of statutory violations brought against moneyed corporations. In other words, the statute must be viewed as a whole in its historical context and in light of its probable purposes in order to determine whether a word or phrase is used in a technical or an ordinary sense.

While our review of old New York legislative history has been limited because of the difficulty of obtaining access to the text of some of the older legislative acts involving "moneyed corporations," the review we have been able to do suggests that moneyed corporations differed from other business corporations in that they did not manufacture or sell products, nor perform services through the provision of labor and machinery, as would a construction company or a transportation company. Rather, it appears that moneyed corporations were in the business of making money *directly* from capital provided by investors, lenders and depositors. They made money only from money, in other words (by engaging in financial transactions); and the money they used was generally not their own. *See* BLACK'S LAW DICTIONARY 342 (6th ed.1990) ("moneyed corporations are, properly speaking, those dealing in money or in the business of receiving deposits, loaning money, and exchange...."); WEBSTER'S SECOND INTERNATIONAL DICTIONARY (1939)("A corporation authorized to engage in the business of using money for the sake of making profit upon it as money, as in the case of banks, insurance companies, etc."). Moneyed corpora-

tions were and are, it appears, investment and loan companies, banks and insurance companies. They were financial organizations. In *Nolan v. Kolar*, 629 S.W.2d 661, 663 (Mo.App.1982), the court applied the six-year statute of limitations under section 516.420 to a forfeiture claim against "the bank, a moneyed corporation." *See also State v. Arnett*, 338 Mo. 907, 92 S.W.2d 897, 899–900 (1936) (prosecution for forgery committed against a "moneyed corporation"—*i.e.*, a bank); *State v. Morro*, 313 Mo. 114, 280 S.W. 697, 698 (1926) (same).

Decisions in other jurisdictions apply the term "moneyed corporations" to financial institutions. *Quinn–Moore v. Lambert*, 272 Ark. 324, 614 S.W.2d 230, 231 (1981) ("A corporation authorized to engage in the business of using money for the sake of making profit upon it as money, as in the case of banks, insurance companies, etc."); *Indus. Corp. of Baltimore City v. State Tax Comm'n of Maryland*, 134 Md. 379, 106 A. 852, 853 (1919) (moneyed institution deals in the use of money); *First Am. Bank & Trust Co. v. Ellwein*, 198 N.W.2d 84, 104 (N.D.1972) ("banking and other financial or moneyed corporations or associations"); *Worthan v. Ohio Cas. Ins. Co.*, 535 P.2d 1025, 1029 (Okla.App.1974) (indemnification for "banks, brokers, financial or moneyed corporations"); *Di Prete v. Vallone*, 72 R.I. 137, 48 A.2d 250, 252 (1946) ("banking and other moneyed corporations"); *Cumberland Capital Corp. v. Patty*, 556 S.W.2d 516, 522 (Tenn.1977) ("banks and other moneyed corporations"); *Seattle First Nat'l Bank v. Washington Ins. Guar. Ass'n*, 116 Wash.2d 398, 804 P.2d 1263, 1267 (1991) (indemnification for "banks, bankers, brokers, financial or moneyed corporations or associations"); *Mews v. Priske*, 164 Wis.2d 433, 476 N.W.2d 25, 25 (App.1991) (limitations period for "actions against . . . a moneyed corporation or banking association").

Our look at history shows that the earliest legislative acts were concerned only with claims against "directors or stockholders" rather than claims against the corporations themselves. This fact suggests that legislators were concerned about fraudulent corporation bankruptcies and insolvencies. Legislators apparently had a concern that financial corporations using money raised by capital subscriptions and loans would be especially subject to manipulation by corporation insiders who might cause a fraudulent insolvency. *See The People v. Walker*, 21 Barb. 630 (N.Y.Sup. Gen. Term 1856); *see also* 1 N.Y.Rev.Stat. 591 (1830) (declaring, *inter alia*, certain transfers in contemplation of insolvency to be criminal acts). The concern, we think, was that creditors and ordinary stockholders would be left "holding the bag," while the corporate insiders would, through manipulation, have unjustly and deceitfully enriched themselves. *See Hill v. Reed*, 16 Barb. 280, 285–87 (N.Y.Sup. Gen. Term 1853).

Moneyed corporations were regulated in such a way as to attempt to prevent such injustices from occurring. *See Purdy v. Peters*, 35 Barb. 239 (N.Y.Sup. Gen. Term 1861). They were regulated as to the terms of note and bills. *Id.* Transfers in contemplation of insolvency were invalidated. *Id.; see* 2 N.Y.Rev.Stat. 588 ("regulations to prevent the insolvency of moneyed corporations . . ."). They were also taxed somewhat differently because of the legislative requirements related to the maintenance of capital reserves. *See Mutual Ins. Co.*, 4 N.Y. at 444, 447 (*citing* 1 N.Y.Rev.Stat. 414, tit. 4 section 1; 1 N.Y.Rev.Stat. 415; 1 N.Y.Rev.Stat. 599).

■ In view of our understanding of the nature of legislative concerns related to "moneyed corporations," we see no reason, and Bann–Cor and the other respondents

provide no reason, to conclude that the term "moneyed corporations" in section 516.420 was intended to exclude real estate mortgage lenders, and instead was intended to apply only to lenders who secure loans with deposits and chattel mortgages. Section 516.420, when adopted in Missouri, added to its provisions claims against the *corporations* as well as claims against stockholders and directors. The apparent overall purpose was to allow the pursuit of remedies against a corporation and its key personnel where the corporation or its insiders had violated a statutory requirement. The adoption of a six-year limitations period from "discovery of the facts" upon which such penalty or forfeiture attached shows a legislative desire to allow victims of unlawful practices a significant period of time to enforce their claims for a penalty or forfeiture.

In light of these factors, it would seem odd for the Missouri legislature to have been concerned about claims against such financial corporations generally, but to have been unconcerned about such corporations lending money on real estate mortgages. If the language as to having "banking powers or having the power to make loans on pledges or deposits, or authorized by law to make insurance" is construed in its ordinary sense, rather than being construed in a technical sense, the language would cover all business entities engaged in banking, lending, and insurance activities with the public. Such a non-technical construction of the language would seem to make sense in light of likely legislative purposes.

Under the theory of Respondents, mortgage companies would be excluded from the definition of "moneyed corporations," but the local "mom and pop" owned pawn shop would be a "moneyed corporation." This makes no sense from any perspective, particularly in light of the history of the concept of "moneyed corporation." Respondents fail to offer any suggestion as to why such a legislative distinction would be made.

A non-technical construction of the word "pledges" would also make sense in light of the fact that in 1874, within ten years after Missouri adopted the statute referring to "moneyed corporations," the State of New York adopted another statute referring to "moneyed corporations", and that the language used in that statute clearly included mortgage companies. 1874 N.Y. Laws 324 (referring to a "moneyed corporation" as any "trust, loan, mortgage, security, guaranty ... company ...."). *See Hobbs*, 101 F. at 76 (stating that a mortgage company was a "moneyed corporation.")

Moreover, it seems at least possible, if not likely, that the phrase "upon deposits and pledges" was not at all referring to the *security* for loans, but was referring instead to the *sources of the capital* with which to make the loans. Banks, for instance, solicit deposits, and then make loans "upon" the deposits. A "moneyed corporation," if not a bank, could also raise capital by borrowing funds and by the issuance of stock shares. Thus, the phrase "making loans upon pledges or deposits" could originally have referred simply to loan companies who, in effect, obtain money from investors and by borrowing, and then make loans with that money. Banks, insurance companies, and loan companies all use capital obtained from others as the basis for the financial transactions from which they seek to make money.

Now, one hundred and forty years after the adoption of section 516.420, finance companies, lenders and banks are more highly regulated. States and the federal government are also engaged in more extensive securities regulation. It may now be more difficult to succeed with a fraudulent bankruptcy. Accordingly, the concept

of a "moneyed corporation" may have less relevance today. A legislature today may not be as concerned with whether a company lends money "upon pledges and deposits" raised from creditors and investors than it would have been in 1865. Nevertheless, the concept of a "moneyed corporation" still exists.

For all the foregoing reasons related to the history of the concept of "moneyed corporation," and giving consideration to the purposes of the statute as a whole, we conclude that to construe the phrase "upon ... pledges" (appearing in a New York statute adopted in the early 1800's) should not be construed in a technical sense or limited to companies making chattel mortgage loans and excluding companies making real estate loans.

Therefore, it is appropriate to conclude that a mortgage finance company such as Bann–Cor is a "moneyed corporation" within the meaning of section 516.420. It is a company that makes loans. It makes loans upon "pledges" in the broad sense of the word, if we are referring to *security.* It also makes loans upon "pledges and deposits" if we are referring to the *source* of the capital with which Bann–Cor makes loans. We also believe the statutory purposes are best fulfilled by holding that all banks, insurers, and finance companies are "moneyed corporations" within the meaning of section 516.420. For the foregoing reasons, we hold that Bann–Cor is a moneyed corporation.

The New York legislature's main concern in 1830 in providing for the six-year limitations period may have been to protect creditors and stockholders rather than debtors. The New York statute speaks in terms of claims against *officers* and *directors* because it assumed a defunct corporation. Missouri, however, in adopting almost identical language, added the concept of claims against *the corporations* as well. Accordingly, the Missouri statute governs claims against a mortgage company arising out of a statutory violation. The statutory language applies to any claims for a penalty or forfeiture arising out of such a violation, whether the claim is against the corporation itself or against directors or shareholders (where a statute has imposed a duty on such). Taking the language at face value, therefore, it appears that section 516.420 is applicable in this case.

■ Bann–Cor presents a sophisticated argument that the action in question is not an action for a penalty or a forfeiture within the meaning of section 516.420 because the claim in this case belongs only to the aggrieved party and not also to the State. Bann–Cor argues that when the action is brought by an aggrieved party, it is by definition a "remedial" claim and not an action for a penalty or a forfeiture. Bann–Cor cites as authority *State ex rel. Webster v. Myers,* 779 S.W.2d 286, 290 (Mo.App.1989); *Julian v. Burrus,* 600 S.W.2d 133, 141 (Mo.App.1980); and *Tabor v. Ford,* 241 Mo.App. 254, 240 S.W.2d 737, 740 (1951).

The problem for the respondents is that it is difficult to make the argument that the claims are remedial and not for a penalty or forfeiture where the very statute that they argue *is* applicable (the three-year statute of section 516.130) also provides the limitation period for "an action upon a statute for *a penalty or forfeiture,* where the action is given to the party aggrieved, or to such party and the state" (emphasis added). The respondents argue the applicability of section 516.130 (because they do not want either a five-year or a six-year limitations period).[2] In any

---

**2.** In making this argument, Respondents risk

the possibility of the court believing that nei-

event, we find respondents' arguments unpersuasive because in order to find the three-year statute applicable on the ground that it is "an action upon a statute for a penalty or a forfeiture," we would have to read a certain self-contradiction into the statute by implying the additional caveat: "provided, however, that if the action is actually one belonging to an aggrieved *party* rather than the state, the limitations period is not six years and instead is three years." This would render the statute absurdly self-contradictory. The point is that a general claim for penalty or forfeiture (except against a moneyed corporation) carries a three-year limitation period under section 516.130(2), *regardless* of whether the action is brought by the State or by the aggrieved party. The claim for penalty or forfeiture against a moneyed corporation carries a six-year limitations period. We reject the notion that this is about the identity of the party bringing the claim. It is only about whether the respondents are "moneyed corporations."

While we do believe that the SMLA is remedial in that it is a consumer protection statute, we note that a remedial statute can also include a penalty or forfeiture. *See Julian*, 600 S.W.2d at 141. Some provisions can be viewed either as remedial or penal. *Id.* But there seems little doubt that in *this* case, the essence of what is motivating Borrowers is the hope of obtaining all the relief allowed under the provisions of the SMLA and section 408.562, which includes penalties and *forfeitures*.

Thus, we conclude that section 516.420 is applicable to this case. The claims of the Borrowers under the SMLA are claims for a "penalty or forfeiture" and are claims to "enforce any liability created by ... any other law." The respondents are "moneyed corporations" within the meaning of section 516.420.

Section 516.130(2) would apparently apply here if this were not an action against a "moneyed corporation."[3] Section 516.420 is the more specific statute of the two because it deals with claims against "moneyed corporations." The fact that section 516.130(2) does not fall into the range of the specific excepted statutes mentioned in 516.420 makes no difference in that section 516.420 remains the more specific statute between the two.

Finally, it is interesting that New York's current counterpart to Missouri's SMLA, called the "High–Cost Home Loans Act," happens to set out within that act a provision for a six-year period of limitations (six years from origination of the loan). N.Y. Banking Law, § 6–l.6 (McKinney 2006). Thus, there may be a certain fortuitous symmetry to our ruling that Missouri's six-year limitations period applies here.

For the foregoing reasons, we agree with Borrowers that the court erred in its legal conclusion as to the limitations period. Point I is granted.

### Points II & III

■ In points II and III, plaintiffs argue that the respondents who purchased the loans from Bann–Cor are "derivatively liable" for the unlawful acts of Bann–Cor

ther section 516.130 nor 516.420 is applicable here, and therefore the applicable statute is section 516.120(2) which is a five-year statute. Neither party desires that result, but the Borrowers would be more content with a five-year limitations period than would the respondents.

3. But *see* § 516.400 (a statute specific to "Actions on Penal Statutes" that also provides for a three-year statute of limitations on actions for a penalty or forfeiture, given in whole or in part to the party aggrieved).

and that they are also "moneyed corporations" within the meaning of section 516.420.

Title 15 U.S.C. section 1641(d) (the Home Ownership Equity Protection Act) provides that assignees of mortgage loans are subject to all claims and defenses under any law that a borrower could have asserted against the original lender. *Vandenbroeck v. ContiMortgage Corp.*, 53 F.Supp.2d 965, 968 (W.D.Mich.1999). The assignee is jointly and severally liable with the original lender. Section 1641(d) eliminates any "holder in due course" defense to the defendants. *Id.* The assignee defendants are derivatively liable under state law as well as under federal law.

In view of the provisions of 15 U.S.C. section 1641, we conclude that the Borrowers can assert derivative claims against the current holders of the loans, unless such claims are barred by a statute of limitations. Therefore, we must consider whether the claims are governed by section 516.420. The Borrowers answered this question by arguing that federal law precludes the assignee defendants from raising any defense different from the defenses available to Bann–Cor. Borrowers point out that the statute renders the assignee defendants "subject to all claims and defenses with respect to the mortgage that the consumer could assert against the creditor of the mortgage." 15 U.S.C. § 1641(d)(1). *See Vandenbroeck*, 53 F.Supp.2d at 968; *Bryant v. Mortgage Capital Res. Corp.*, 197 F.Supp.2d 1357, 1364–65 (N.D.Ga.2002).

Because the purposes of the federal Home Ownership Equity Protection Act are clearly served by placing the assignee defendants in the same position as Bann–Cor, we agree with Borrowers that Borrowers' claims against the assignee defendants are not foreclosed by any legal provision, whether or not the assignees are "moneyed corporations" under Missouri law.

### Point IV

This brings us to the final point of the Borrowers, which is related to their attempt to add Daniel and Wanda Jensen as additional plaintiffs and class representatives in the case. The trial court denied the motion because, in view of its ruling on the statute of limitations issue amendment would have been futile. Because the Jensen claim would also be barred by the three-year statute of limitations. We have already determined that the Borrowers claims were timely under the six-year statute. The record shows that the Jensens' claims were also timely. Accordingly, we determine that the trial court erred in denying the motion to add the Jensens to the case.

### Conclusion

Accordingly, we reverse the trial court's judgment granting the motions to dismiss of Bann–Cor and The Money Store defendants. We also reverse the trial court's grant of the motion for summary judgment filed by the Master Financial Trusts. We also reverse the trial court's ruling denying plaintiffs' motion for leave to add the Jensens as plaintiffs and as class representatives. We remand the case for further proceedings.

ULRICH and BRECKENRIDGE, JJ., concur.